# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAWN ROACH,**<br><br>          **Plaintiffs,**<br><br>    **v.**<br><br>**VUMEDI, INC.,**<br><br>          **Defendant.** | **Civil Action No.: 3:24-cv-07795 (ZNQ/JTQ)** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT VUMEDI, INC.

Elizabeth F. Lorell, Esq.
Qing H. Guo, Esq.
**GORDON REES SCULLY MANSUKHANI, LLP**
290 W Mt. Pleasant Avenue, Suite 3310
Livingston, New Jersey 07039
Phone No.: (973) 549-2500
Fax No.: (973) 377-1911
Email: elorell@grsm.com
     qguo@grsm.com
*Attorneys for Defendant VuMedi, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT..................................................................................1

STATEMENT OF FACTS ........................................................................................2

     A.    VuMedi's Business and Plaintiff's Employment ...................................2

     B.    Plaintiff's Performance Deficiencies ....................................................4

     C.    Plaintiff's Deception and Misconduct in January 2024.......................5

     D.    The Performance Improvement Plan .....................................................6

     E.    Plaintiff's Termination ..........................................................................7

     F.    Complete Absence of Evidence of Discrimination or Retaliation ........8

PROCEDURAL HISTORY ......................................................................................9

LEGAL STANDARD ..............................................................................................9

LEGAL ARGUMENT ...........................................................................................11

POINT I. SUMMARY JUDGMENT IN FAVOR OF VUMEDI IS
            WARRANTED BECAUSE PLAINTIFF'S TERMINATION
            WAS BASED ON LEGITIMATE NON-DISCRIMINATORY
            REASONS. .......................................................................................11

     A.    No Evidence Exists of Gender Discrimination under Title VII nor
          NJLAD. ................................................................................................11

          1.    Plaintiff Fails to Establish her Prima Facie Case of Gender
               Discrimination under Title VII and NJLAD. ...........................12

               a.    Plaintiff Cannot Establish that Her Termination
                      Gives Rise to an Inference of Unlawful
                      Discrimination. .............................................................13

          2.    VuMedi's Legitimate Reasons for Termination........................17

          3.    Plaintiff Cannot Show Pretext ..................................................20

i

a.      VuMedi's Offer of Severance to Roach Is Not
        Proof of Pretext..................................................................23

POINT II. PLAINTIFF FAILS TO ESTABLISH HER PRIMA FACIE
        CASE FOR RETALIATION AND NO PRETEXT EXISTS FOR
        HER LEGITIMATE NON-RETALIATORY TERMINATION
        BASED ON PERFORMANCE. .........................................................24

A.      Plaintiff Never Engaged in Protected Activity....................................25

B.      No Causal Connection Exists Between Any Alleged Activity and
        Termination......................................................................28

C.      VuMedi's Legitimate Non-Retaliatory Reasons Cannot Be Rebutted 29

POINT III. POINT IIIPLAINTIFF IS BARRED FROM RECOVERY
        UNDER THE AFTER-ACQUIRED EVIDENCE DOCTRINE
        FOR HER MISCONDUCT DISCOVERED AFTER HER
        TERMINATION. ...................................................................30

A.      Legal Standard for After-Acquired Evidence Doctrine ......................31

B.      VuMedi Discovered Plaintiff's Serious Misconduct During Litigation
        ...................................................................................32

        1.      Plaintiff Fabricated Meetings and Attempted to Manipulate a
                Colleague .............................................................32

        2.      The Misconduct Warranted Immediate Termination ...............34

C.      Application of the After-Acquired Evidence Doctrine .......................35

        1.      Reinstatement, Front Pay, and Back Pay Must Be Barred or
                Limited ...............................................................35

        2.      Compensatory and Punitive Damages Should Be Barred or
                Limited ...............................................................36

D.      Plaintiff's Misconduct Provides Independent Grounds for Summary
        Judgment ..........................................................................37

CONCLUSION ..................................................................................38

## PRELIMINARY STATEMENT

This case presents a straightforward employment termination based on documented performance deficiencies, weaponized by Plaintiff as a gender discrimination/retaliation lawsuit post-termination. Plaintiff Dawn Roach ("Plaintiff" or "Roach") was employed by VuMedi, Inc. ("Defendant" or "VuMedi") as a Director of Medical Education for eight months. Despite extensive coaching, mentoring, and a formal performance improvement plan, Plaintiff consistently failed to meet the basic requirements of her position. She achieved only 53% of her already-reduced performance goals, relied almost exclusively on subordinates to perform her job functions, maintained an empty calendar despite working in a meeting-intensive role, and failed to independently generate the leads and partnerships essential to her director-level position.

The undisputed record establishes that VuMedi provided Plaintiff with every opportunity to succeed: a two-month onboarding period, weekly one-on-one coaching sessions with her supervisor, guidance from colleagues, and a 30-day performance improvement plan with clear, objective metrics and additional support. When Plaintiff failed to meet even these reduced goals, VuMedi made the difficult decision to terminate her employment based solely on performance.

Plaintiff now claims her termination was motivated by gender discrimination and retaliation. However, the record contains no evidence supporting these claims.

1

Plaintiff never complained about discrimination during her employment, despite receiving an employee handbook with clear anti-discrimination policies and reporting procedures. Not a single witness—including her supervisors, colleagues, and HR personnel—ever heard her mention discrimination or heard any discriminatory comments directed at her. Plaintiff cannot identify a single similarly situated male employee who was treated more favorably.

Moreover, during litigation, VuMedi discovered that Plaintiff fabricated work activities to conceal her poor performance. On January 22, 2024, when questioned about her lack of productivity, Plaintiff texted a junior colleague asking him to lie about having a meeting that never occurred and to retroactively add it to his calendar. She then provided detailed false information to her supervisor about this fabricated meeting. This serious misconduct, which violated company policies prohibiting dishonesty and falsification of records, would have resulted in immediate termination had VuMedi known about it at the time.

For these reasons, VuMedi respectfully requests that this Court grant summary judgment dismissing Plaintiff's claims in their entirety.

## STATEMENT OF FACTS

### A.    VuMedi's Business and Plaintiff's Employment

VuMedi is a healthcare video education technology company that works with world-renowned key opinion leaders ("KOL"), hospitals, and societies to

distribute timely and critical education in the healthcare world. (Statement of Undisputed Material Facts ("SUMF") ¶ 1)

Plaintiff began her employment with VuMedi on July 31, 2023. (SUMF ¶¶ 2-3) She was hired as Director of Medical Education with a focus on diabetes and obesity, bringing more than 15 years of experience in medical device and pharmaceutical sales and education, including expertise in diabetes care and related products. (SUMF ¶¶ 4-5, 13)

Plaintiff's direct supervisor was Bernardo Schubsky ("Schubsky"), Senior Director of Medical Education, whose direct reports consisted of four females and one male. (SUMF ¶¶ 6-7) Hazen served as Schubsky's supervisor in her role as General Manager of Healthcare Professional Education. (SUMF ¶¶ 9-10) Plaintiff did not manage anyone in her director-level role but worked most closely with Sonja Lee (an education manager one level below her) and Michael Rausch (a coordinator two levels below her). (SUMF ¶¶ 11-14)

After a two-month onboarding period, VuMedi provided Plaintiff with quarterly goals for Q4 2023 and Q1 2024: (a) 25 GLP-1 videos, (b) 20 diabetes videos, (c) 15 obesity videos, and (d) two partnership goals—a total of 60 videos. (SUMF ¶¶ 18, 20) During this same time period, the team goal for Q1 2024 was around 900-1,000 videos per quarter. (SUMF ¶ 21) Lee and Rausch, who were below Plaintiff's director level, were each responsible for 300-400 videos with a

3

combined goal of 660 videos. (SUMF ¶ 22) Thus, Plaintiff's quarterly goal of 60 videos total was substantially lower than what her subordinates were expected to achieve.

Plaintiff and Schubsky had standing weekly one-on-one meetings to discuss business matters, questions, and opportunities. (SUMF ¶¶ 16-17)

### B.    Plaintiff's Performance Deficiencies

Starting in October/November 2023, Lee provided extensive guidance to Plaintiff on basic job functions, including "opportunities on where and who to reach out to, supplying the list of names, how to find the emails, tagging her in the article prospecting document on what template to use for those specific reach-outs." (SUMF ¶ 23) Lee received feedback from Rausch that he was helping Plaintiff perform her duties beyond his job responsibilities. (SUMF ¶ 24) Lee and Rausch mutually complained about the extra workload resulting from Plaintiff being part of the team, and Lee brought these concerns to Schubsky. (SUMF ¶ 25)

By November 2023, Schubsky received multiple complaints from Lee that Plaintiff was relying on Lee and Rausch for her goals, stating "it is getting really, really bad because [Plaintiff] is actually not doing this. I can see that she's posting that she's recording those videos, she's not doing that. She still relying on me and Mike to do … the work for her." (SUMF ¶¶ 26-27) In December 2023, Hazen

received a complaint from Paulina Cujzek that "Roach was not doing her job, and not meeting her goals." (SUMF ¶ 28)

VuMedi was concerned that Plaintiff was almost exclusively relying on colleagues to meet her goals and failing to independently develop necessary acquisitions and partnerships. (SUMF ¶ 29) Specifically, Hazen noted that Plaintiff "had no opportunities logged in Salesforce, or next to none, compared to her peers. She had no scheduled meetings on her calendar, in comparison with other meeting-heavy pipeline builders. And she wasn't responding when [Schubsky] would reach out to her even though she had nothing scheduled over that period." (SUMF ¶ 30) Plaintiff's "calendar was basically empty" while peers in similar roles had "fairly full calendar[s]." (SUMF ¶ 32) Plaintiff was directed to focus on following the company's partnership playbook and to update the SalesForce database to ensure her efforts were being accurately counted. (SUMF ¶¶ 34-35)

### C.    Plaintiff's Deception and Misconduct in January 2024

On January 22, 2024, at 3:25 p.m., Schubsky emailed Plaintiff about her missing weekly update on Slack. (SUMF ¶ 36) Plaintiff responded at 3:31 p.m. claiming she had been on "a call with Mike and a call with a KOL." (SUMF ¶ 37)

Shortly after, Plaintiff texted Rausch: "u and I had a call at 2pm fyi 😊". When Rausch responded "I had nothing on my calendar?", Plaintiff instructed him: "if B asks" and "Put something on the calendar retroactively". (SUMF ¶ 38)

5

Plaintiff then added a calendar invite between her and Rausch from 1-1:30 p.m. and texted Rausch "done". (SUMF ¶ 39)

When Schubsky noted the retroactively added meeting, Plaintiff fabricated a detailed account of her supposed conversation with Rausch about "the potential T1 video," as if the meeting had actually occurred. (SUMF ¶¶ 40-41)

Rausch disclosed that no such conversation ever occurred and that Plaintiff had asked him to lie. (SUMF ¶¶ 42-43) Rausch felt uncomfortable with the request because Plaintiff, as a Director, held a position of authority over him. (SUMF ¶ 44) Rausch complained to Lee that Plaintiff had asked him to lie to a superior, placing him in a tough position because she was two levels above him. (SUMF ¶ 45)

VuMedi did not discover Plaintiff's fabrication and her attempt to manipulate Rausch until litigation. (SUMF ¶ 46) VuMedi prohibits falsifying records and dishonest conduct, and provides that such violations can result in immediate discharge. (SUMF ¶ 47)

### D.    The Performance Improvement Plan

Plaintiff was placed on a 30-day performance improvement plan ("PIP") on February 29, 2024, ending on March 29, 2024. (SUMF ¶ 48) Plaintiff's video acquisition goals remained the same during her PIP—60 videos for the quarter. (SUMF ¶ 49)

Once the PIP started, Plaintiff's weekly meetings with Schubsky became twice weekly, she had two one-on-one calls with Hazen, and Paulina Cujzek met with Plaintiff twice a week for coaching after returning from maternity leave. (SUMF ¶¶ 50-52)

Following the PIP's issuance, Plaintiff "was generating more action, but still not the level other people on the team. For example, still no meetings, still very low pipeline in Salesforce, one video potentially a week. And that's just not … the pace that is necessary." (SUMF ¶ 53)

Plaintiff failed to meet her PIP goals. (SUMF ¶ 54) She acquired only 12 GLP-1 videos (of 25 required), 5 diabetes videos (of 20 required), and 15 obesity videos (of 15 required). (SUMF ¶ 55) In total, Plaintiff individually contributed only 32 of the 60 required videos. (SUMF ¶ 56) Rausch believed that Plaintiff's goal of 60 videos should not have been difficult to reach for her. (SUMF ¶ 57)

**E.    Plaintiff's Termination**

On April 5, 2024, VuMedi informed Plaintiff of her termination due to performance. (SUMF ¶ 58) Roman Giverts ("Giverts"), VuMedi's CEO, approved Plaintiff's termination based on the recommendation of and performance deficiencies identified by Hazen. (SUMF ¶ 59) VuMedi offered Plaintiff a severance package, which it offers to all terminated employees. (SUMF ¶¶ 60-61)

7

**F.      Complete Absence of Evidence of Discrimination or Retaliation**

After her termination, Plaintiff filed this lawsuit alleging discrimination and retaliation based on gender under Title VII and NJLAD. (SUMF ¶ 62)

VuMedi's Employee Handbook sets forth policies prohibiting all forms of discrimination and the complaint procedure for reporting concerns. (SUMF ¶¶ 63, 66-67) Plaintiff never raised any written complaints about her treatment or discrimination based on gender during employment. (SUMF ¶ 68) She did not put in writing to Hazen or HR that she felt Schubsky was being condescending or discriminatory to her. (SUMF ¶¶ 70-71)

Schubsky denies telling Plaintiff that as a mom she can't work overtime and denies receiving any complaints from Plaintiff about gender-based treatment. (SUMF ¶¶ 72-73) Not a single VuMedi employee—including Hazen, Giverts, Bailey, Lee, and Rausch—ever heard Schubsky make discriminatory comments to Plaintiff, heard Plaintiff mention discrimination, or heard Plaintiff express that she felt treated differently because of her gender or status as a mother. (SUMF ¶¶ 74-76) Other than Plaintiff's allegations, Plaintiff herself has never heard or witnessed Schubsky treating employees differently based on gender. (SUMF ¶ 69)

Plaintiff identifies one male employee at her director level but stated "I'm not sure" when asked if he was treated differently. (SUMF ¶¶ 77-78) The only example of any male employee Plaintiff considered being treated more favorably

8

was Rausch, who was not similarly situated because he held a coordinator position two levels below Plaintiff's director level. (SUMF ¶¶ 79-80) Plaintiff did not tell anyone she felt Rausch was being treated more favorably because he was male, nor did she inform VuMedi that her performance issues were because of personal matters requiring time off. (SUMF ¶¶ 83-84)

## PROCEDURAL HISTORY

Following her termination, Roach filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and served an attorney demand letter on April 25, 2024.

On July 16, 2024, Plaintiff filed the pending two-Count Complaint in the United States District Court for the District of New Jersey alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination ("NJLAD"). (ECF No. 1)

VuMedi now moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party," and it is material only if it has the ability to "affect the outcome of the suit

9

under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

There can be "no genuine issue as to any material fact," if a party fails "to make a showing sufficient to establish the existence of an element essential to her case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Local Rule 56.1(a) imposes an additional procedural requirement for the movant: "On motions of summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L.Civ.R. 56.1(a).

10

# LEGAL ARGUMENT

## POINT I.

### SUMMARY JUDGMENT IN FAVOR OF VUMEDI IS WARRANTED BECAUSE PLAINTIFF'S TERMINATION WAS BASED ON LEGITIMATE NON-DISCRIMINATORY REASONS.

Roach was terminated on April 5, 2024, following her failure to complete the goals set forth in her PIP and the essential requirements of her role. Plaintiff's claims of gender discrimination and retaliation under Title VII and NJLAD are subject to dismissal on summary judgment. There is no evidence in the record of discrimination or retaliation by VuMedi against Plaintiff, nor that Plaintiff was terminated because of her gender. Instead, the undisputed material facts confirm that Plaintiff was terminated for failing to complete her performance goals under her PIP and for her consistently deficient performance throughout her eight-month tenure.

### A.    No Evidence Exists of Gender Discrimination under Title VII nor NJLAD.

Plaintiff's claims of gender discrimination under Title VII and NJLAD are subject to dismissal on summary judgment. To establish gender discrimination under Title VII and NJLAD, courts undertake the burden shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment.)

11

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." …. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (internal citations omitted).

### 1.    Plaintiff Fails to Establish her Prima Facie Case of Gender Discrimination under Title VII and NJLAD.

Plaintiff fails to set forth a *prima facie* case of gender discrimination against VuMedi. "Title VII prohibits employment discrimination based on an individual's sex." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *see* 42 U.S.C. § 2000e–2(a)(1). This Court's discrimination inquiry is the same for claims filed under Title VII and NJLAD, as the New Jersey statute borrows the federal standard set forth in *McDonnell Douglas. Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006).

To establish a *prima facie* case of sex discrimination, a plaintiff must first establish that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that

12

adverse employment action gives rise to an inference of unlawful discrimination. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citations omitted).

Defendant does not dispute that as a female, Plaintiff is a member of a protected class under Title VII and NJLAD, that she was qualified for the position as Director of Medical Education based on her prior pharmaceutical sales experience, and that there was an adverse employment action in the form of termination of employment. However, Defendant asserts that Plaintiff cannot satisfy the fourth prong of her prima facie case that her termination gives rise to an inference of unlawful gender discrimination.

### a. Plaintiff Cannot Establish that Her Termination Gives Rise to an Inference of Unlawful Discrimination.

No evidence exists in the record of inference of any unlawful discrimination on the basis of gender. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion] ... because of ... sex* [or membership in another protected class]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasis in original). As a result, "[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender (or membership in other protected groups)." *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000), *aff'd sub nom. Koschoff v. Runyon*, 35 Fed.Appx. 357 (3d Cir. 2002). Additionally, Title VII does not "reach genuine but innocuous differences in the ways men and women

13

routinely interact with members of the same sex and of the opposite sex ...; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale*, 523 U.S. at 81.

Here, Plaintiff fails to establish gender discrimination, and there is no evidence in the record that VuMedi treated similarly situated male employees more favorably than Plaintiff. *See Smith v. Sec'y USN*, 843 F. App'x 466, 469 (3d Cir. 2021) (finding "an inference of unlawful discrimination ... where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably".)

To the contrary, the evidence demonstrates that VuMedi's workplace was inclusive and supportive of women:

- Plaintiff's entire leadership chain includes parents: Schubsky's wife is a working mother and his supervisor Hazen is also a working mother (SUMF ¶¶ 8-9);

- Paulina Cujzek, assigned to coach Plaintiff during her PIP, had recently returned from maternity leave, demonstrating VuMedi's support for working mothers (SUMF ¶¶ 7, 52); and

- No other female employees on the Education team have ever brought similar complaints about discriminatory treatment to management's attention (SUMF ¶¶ 74-76).

The absence of any contemporaneous complaints of discrimination during Plaintiff's employment further undermines any inference of discrimination. Plaintiff received VuMedi's Employee Handbook, which clearly outlined the company's anti-

14

discrimination policies and complaint procedures, yet she never reported any concerns about gender-based treatment to human resources, senior management, or even her colleagues. (SUMF ¶¶ 63, 66-68) Plaintiff never raised any written complaints about her treatment or discrimination based on gender during employment. (SUMF ¶ 68) She did not put in writing to Hazen or Bailey that she felt Schubsky was being condescending or discriminatory to her. (SUMF ¶¶ 70-71)

Most tellingly, not a single VuMedi employee—including Hazen, Giverts, Bailey, Lee, and Rausch—ever heard Schubsky make discriminatory comments to Plaintiff, heard Plaintiff mention discrimination, or heard Plaintiff express that she felt treated differently because of her gender or status as a mother. (SUMF ¶¶ 74-76) Plaintiff herself has never heard or witnessed Schubsky treating other employees differently based on gender. (SUMF ¶ 69) The timing of these allegations, raised for the first time only after Plaintiff's performance-based termination, further undermines their credibility.

Significantly, Plaintiff failed to produce any evidence or articulate any similarly situated male employees at VuMedi who were treated differently or more favorably than her. Plaintiff testified about one male employee who was similarly situated to her at a director level of education, but said "I'm not sure" when asked if she felt that he was treated differently than her. (SUMF ¶¶ 77-78)

The only example of any male employee Plaintiff considered being treated more favorably than her was Michael Rausch. (SUMF ¶ 79) However, Rausch was not similarly situated to Plaintiff—he held a coordinator position, which was two levels below Plaintiff's director level position. (SUMF ¶ 80) Plaintiff testified that

15

"[Rausch] has had some performance issues and seems like they have bent over backwards trying to accommodate him." (SUMF ¶ 81) The basis of this knowledge was from Rausch telling her that "he was having some things that were affecting his work and they were encouraging him to take FMLA if that was going to continue." (SUMF ¶ 82)

Plaintiff did not tell anyone that she felt Rausch was being treated more favorably than her because he was male. (SUMF ¶ 83) Moreover, there is no evidence that Plaintiff complained to VuMedi that her performance issues were because of personal matters that would require taking personal time off. (SUMF ¶ 84) In fact, Lee counseled Rausch only once regarding performance in November 2024 over Zoom when there were internal missed responses to scheduling of a campaign, and she never had any issues with Rausch meeting any goals. (SUMF ¶ 85) This stands in stark contrast to the extensive and repeated performance issues documented with respect to Plaintiff throughout her eight-month tenure. (SUMF ¶¶ 23-35, 53-57)

Because of her failure to identify any similarly situated male employee who was treated more favorably than her, Plaintiff fails to establish a prima facie case of gender discrimination. *See DeColli v. Paragon Sys., Inc.*, No. CV1921192MASTJB, 2022 WL 18027853, at *6 (D.N.J. Dec. 31, 2022) (Judge Shipp found that plaintiff's failure to identify any similarly situated female employees who were treated more

favorably than him, warranted summary judgment based on failure to establish prima facie case of gender discrimination.)

Moreover, the fact that VuMedi invested substantial resources in hiring, training, and coaching Plaintiff—including a two-month onboarding period, regular weekly one-on-one coaching sessions with Schubsky, and a structured PIP with additional support including twice-weekly meetings with both Schubsky and Cujzek, plus two one-on-one calls with Hazen—strongly negates any inference of discriminatory intent. (SUMF ¶¶ 15-17, 50-52) It defies logic to suggest that VuMedi would make such significant investments in an employee it intended to discriminate against based on gender.

Accordingly, Plaintiff fails to establish her *prima facie* case of gender discrimination under Title VII and NJLAD.

### 2.     VuMedi's Legitimate Reasons for Termination.

VuMedi has legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Even if the Court finds that Plaintiff was to establish a prima facie case of gender discrimination (which Defendant disputes), the burden shifts back to VuMedi to proffer a legitimate, non-retaliatory reason for the termination. VuMedi easily satisfies this burden.

"The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory

17

reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508 (1993)); *see also Maiorino v. Schering–Plough Corp.,* 302 N.J.Super. 323 (App. Div. 1997). "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes,* 32 F.3d at 763. This is a light burden. *Id.*

VuMedi has substantial evidence of legitimate, non-discriminatory reasons for Plaintiff's termination. Plaintiff was terminated for several well documented performance issues after having been notified of her shortcomings and given an opportunity under the PIP to improve.

First, Plaintiff failed to meet the specific, objective goals set forth in her PIP. (SUMF ¶ 54) Despite clear targets of 25 GLP-1 videos, 20 diabetes videos, and 15 obesity videos (60 total), she acquired only 12, 5, and 15 respectively— contributing only 32 of 60 required videos and achieving just 53% of her overall quarterly goal. (SUMF ¶¶ 49, 55-56)

Second, Plaintiff's performance was substantially below that of her peers. While Lee and Rausch—both at lower levels than Plaintiff's director position— were each responsible for 300-400 videos with a combined goal of 660 videos, Plaintiff could not meet her significantly reduced goal of 60 videos. (SUMF ¶¶ 13-

18

14, 21-22, 57) The team goal for Q1 2024 was 900-1,000 videos per quarter. (SUMF ¶ 21)

Third, despite extensive coaching and warnings dating back to November 2023, Plaintiff failed to demonstrate improvement in core job functions. (SUMF ¶¶ 23-35) By November 2023, Lee complained that Plaintiff was "not doing this...still relying on me and Mike to do...the work for her." (SUMF ¶ 27) Hazen noted that Plaintiff "had no opportunities logged in Salesforce...no scheduled meetings on her calendar...wasn't responding" despite having nothing scheduled. (SUMF ¶ 30) Plaintiff's calendar was "basically empty" while peers in similar roles had "fairly full calendar[s]." (SUMF ¶ 32) Even after the PIP with enhanced support— including twice-weekly meetings with Schubsky and coaching sessions with Cujzek—Plaintiff showed minimal improvement: "still no meetings, still very low pipeline in Salesforce, one video potentially a week." (SUMF ¶¶ 50-53) The Third Circuit has held that "demonstrably poor job performance" constitutes a "legitimate, non-discriminatory reason" for termination. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

Fourth, Plaintiff's deliberate deception on January 22, 2024—fabricating meetings and attempting to manipulate Rausch into corroborating her lies— violated VuMedi's policies prohibiting falsifying records and dishonest conduct,

which can result in immediate discharge. (SUMF ¶¶ 36-47) VuMedi did not discover this misconduct until litigation. (SUMF ¶ 46)

Courts in this district have consistently found performance-based reasons to be sufficiently legitimate and non-discriminatory to meet Defendant's light burden. *See Taylor v. Amcor Flexibles Inc.*, 669 F. Supp. 2d 501, 507 (D.N.J. 2009), *aff'd,* 507 F. App'x 231 (3d Cir. 2012); *see also Lawrence v. Nat'l Westminster Bank,* 98 F.3d 61, 67 (3d Cir. 1996) (On a defendant's motion for summary judgment 'the question is whether [the record definitively shows] the employer [acted] for a non-discriminatory reason.'")

Plaintiff was terminated for several well-documented performance issues after having been notified of her shortcomings and given extensive opportunities to improve through coaching, mentoring, and the formal PIP process. VuMedi has clearly satisfied its burden of articulating legitimate, non-discriminatory reasons for Plaintiff's termination.

### 3.    Plaintiff Cannot Show Pretext

Once VuMedi establishes a legitimate and nondiscriminatory reason for terminating Plaintiff's employment, then the burden switches back to Plaintiff to show by a preponderance of the evidence that the proffered justification is more likely than not a pretext for discrimination. *Fuentes*, 32 F.3d at 763 (where sufficient evidence in the record supports the employer's proffered business reason

for the termination, a court should not substitute its own judgment for the employer's and find pretext.) Plaintiff cannot do so here.

To avoid summary judgment, a plaintiff's "evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons, … was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). *Fuentes*, 32 F.3d at 764; citing *Logue v. International Rehab. Assocs., Inc.,* 837 F.2d 150, 155 (3d Cir.1988) (holding that "the district court erred in failing to consider *all* of [the employer's] proffered evidence of legitimate business reasons for [the plaintiff's] termination" (emphasis supplied)), *aff'd after remand,* 866 F.2d 1411 (3d Cir.1989); *see also Armbruster v. Unisys Corp.,* 32 F.3d 768, 779 (3d Cir.1994) (holding that a single comment, is not sufficient evidence to establish a pattern of discrimination, even if that comment is made by a supervisor); *Salkovitz v. Pioneer Electronics (USA) Inc.,* 188 Fed.Appx. 90, 94 (3d Cir.2006) (finding comments, taken in light of the strong evidence that he was not qualified for the job, don't suggest "hidden motivations").

"While this standard places a difficult burden on the plaintiff, "[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." "The ultimate burden of persuading the trier of fact that the defendant

21

intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affs.*, *supra*, 450 U.S. 253 *see generally* 9 J. Wigmore, Evidence § 2489 (3d ed. 1940) (the burden of persuasion "never shifts").

Here, there is overwhelming evidence of performance deficiencies. Plaintiff contends in her Complaint that the PIP was "bogus" and that she was terminated despite her high performance. Again, the documentary and testimonial evidence shows that Plaintiff failed to perform and meet her very basic job function and goals. Plaintiff's goals were lower than that of her colleagues, and she still failed to meet them. Thus, in the absence of evidence to the contrary, there is nothing to demonstrate that the VuMedi's concerns regarding Plaintiff's goals as set forth in her PIP were pretextual.

Moreover, VuMedi made the decision to hire her, knowing that she was female. *Maidenbaum v. Bally's Park Place*, 870 F. Supp. 1254, 1266 n.24 (D.N.J. 1994) ("Employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing.") (internal quotes omitted), *aff'd,* 67 F.3d 291 (3d Cir.1995); *Young v. Hobart West Group,* 385 N. J.Super. 448, 897 (App. Div. 2005) (noting that employee having been hired and fired by same person "strongly counters against inference of discrimination").

22

a.    **VuMedi's Offer of Severance to Roach Is Not Proof of Pretext.**

Plaintiff's claim that VuMedi's offer to provide her severance benefits is somehow pretext and evidence of discrimination or retaliation is simply incorrect. The mere offer of severance does not constitute evidence of discriminatory intent. Courts have consistently held that severance offers, particularly when made as part of a standard company practice, do not support an inference of discrimination. *Baker v. United Def. Indus., Inc.*, 403 F. App'x 751, 757 (3d Cir. 2010) (encouraging plaintiff to accept severance alone does not show that defendant had legitimate reasons to terminate his employment); *Arenas v. L'Oreal USA Prods., Inc.*, 790 F.Supp.2d 230, 238–40 (D.N.J. 2011) (rejecting that early retirement severance offer indicated discriminatory animus where no other evidence was shown), aff'd, 461 F. App'x 131 (3d Cir. 2012); *E.E.O.C. v. MCI Int'l, Inc.*, 829 F.Supp. 1438, 1462–63 (D.N.J. 1993) (holding that offer of severance package is not itself indicative of discrimination); *Didier v. Dow Jones Co.*, No. CIV. 13-0176 FLW, 2014 WL 4094920, at *15 (D.N.J. Aug. 18, 2014) (finding that a severance offer is insufficient to discredit Defendant's proffered reasons for disciplining and terminating Plaintiff).

As is typical for similar businesses nationwide, VuMedi offered Plaintiff severance upon her exit to promote an amicable transition and assist her in finding her next opportunity. (SUMF ¶ 60) VuMedi offers severance to all employees it

23

terminates to provide runway for individuals to find their next venture. (SUMF ¶ 61) VuMedi's severance offer represents a generous attempt to support an involuntarily terminated employee, not evidence of discriminatory intent.

The combination of well-documented performance issues (SUMF ¶¶ 23-35, 48-57), extensive support provided to Plaintiff including coaching, mentoring, and a structured PIP (SUMF ¶¶ 16-17, 34-35, 48-53), and the complete absence of any contemporaneous discrimination complaints (SUMF ¶¶ 68-76) strongly supports VuMedi's position that Plaintiff's termination was based solely on legitimate, non-discriminatory reasons related to her job performance. Plaintiff fails to show pretext.

## POINT II.

### PLAINTIFF FAILS TO ESTABLISH HER PRIMA FACIE CASE FOR RETALIATION AND NO PRETEXT EXISTS FOR HER LEGITIMATE NON-RETALIATORY TERMINATION BASED ON PERFORMANCE.

Plaintiff's retaliation claims under both Title VII and NJLAD should be dismissed on summary judgment. Plaintiff's retaliation claims under the Title VII and NJLAD are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas*, 411 U.S. at 792. *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).

"To establish a claim for retaliation, a plaintiff must show, '(1) protected employee activity; (2) adverse action by the employer either after or

24

contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 (3d Cir. 2018) (citation omitted). "If the plaintiff is able to establish these elements of [her] prima facie case, 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.'" *Shellenberger*, 318 F.3d at 187 (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). "If the employer satisfies that burden, the plaintiff must then prove that 'retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.'" *Id.* (citing *Krouse*, 126 F.3d at 501).

## A.    Plaintiff Never Engaged in Protected Activity

Plaintiff cannot establish her *prima facie* case of retaliation for gender discrimination under Title VII and NJLAD because she never engaged in protected activity during the course of her employment. Under Title VII, "it shall be unlawful for an employer to discriminate against an employee because she has 'opposed any practice made unlawful employment practice by this subchapter.'" *Neiderlander v. Am. Video Glass Co.*, 80 F. App'x 256, 260 (3d Cir. 2003), quoting 42 U.S.C. § 2000e–3(a). "[A] plaintiff alleging retaliation must show some form of opposition, which is communicated to the employer, followed by adverse action by the employer." *Neiderlander, id.*

25

Plaintiff fails to establish even the first element of her *prima facie* case of retaliation. As relevant here, Title VII[1] protects "those who oppose discrimination made unlawful by Title VII (the "opposition clause")." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). As a result, "[n]ot every complaint or report entitles its author to protection from retaliation under Title VII. Rather, only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute 'protected activity.'" *Davis v. City of Newark*, 417 Fed.Appx. 201, 202–03 (3d Cir. 2011). Thus, for a complaint to constitute "protected activity" under Title VII or the NJLAD, "it must implicate an employment practice made illegal by Title VII." *Id.* at 203; *See Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 466 (App. Div. 2005) ("[A] person engages in protected activity under the [NJLAD] when that person opposes any practice rendered unlawful under the [NJLAD].").

Courts have held that vague complaints about unfair treatment, without specific reference to discrimination based on protected characteristics, do not constitute protected activity under Title VII or the NJLAD. *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) (holding that "a complaint

---

[1] The Third Circuit has explained that the same analysis applies to the protected activity prong of a retaliation case brought under the NJLAD and Title VII. *See Davis v. City of Newark*, 417 Fed.Appx. 201, 203 (3d Cir. 2011).

26

must be sufficiently specific to make it clear to the employer that the employee is complaining about conduct prohibited by Title VII").

There is no documentary evidence nor any direct or circumstantial evidence that corroborates the conclusory statements in Plaintiff's Complaint that she engaged in protected activity. No complaints nor any allegations of complaints were made to VuMedi before Plaintiff was issued a PIP on February 29, 2024, nor before she was terminated on April 5, 2024. (SUMF ¶¶ 48, 58, 68)

The record reflects that VuMedi received no complaints of gender discrimination from Plaintiff during her employment. (SUMF ¶ 68) Plaintiff's managers and colleagues all deny that she made any discrimination complaints and testified that they only learned of these allegations as a result of this lawsuit. (SUMF ¶¶ 73-76) Schubsky denies receiving any complaints from Plaintiff about gender-based treatment (SUMF ¶ 73), and not a single VuMedi employee ever heard Schubsky make discriminatory comments to Plaintiff or heard Plaintiff mention discrimination. (SUMF ¶¶ 74-76)

Plaintiff did not put in writing to Hazen or Bailey that she felt Schubsky was being condescending or discriminatory to her. (SUMF ¶¶ 70-71) Plaintiff received VuMedi's Employee Handbook, which clearly set forth the company's policies prohibiting discrimination and retaliation, as well as specific procedures for reporting such concerns, yet Plaintiff never availed herself of these procedures.

27

(SUMF ¶¶ 63, 66-67) The absence of any contemporaneous complaints—written or oral, formal or informal—is fatal to Plaintiff's retaliation claim.

Because Plaintiff cannot establish that she engaged in any protected activity, her retaliation claims fail as a matter of law.

> ### B. No Causal Connection Exists Between Any Alleged Activity and Termination.

Even if the Court indulges Plaintiff's claim that she engaged in protected activity, she cannot establish a causal connection between any such activity and her termination. To demonstrate causation, a plaintiff must show that the protected activity was a "but-for" cause of the adverse employment action. *Fowler*, 19 F.4th at 299. Temporal proximity alone is insufficient to establish causation when, as here, there is overwhelming evidence of legitimate, non-retaliatory reasons for the adverse action. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

As detailed in the Statement of Facts and Point I, VuMedi documented performance issues from October 2023 forward, provided ongoing coaching and feedback throughout late 2023 and early 2024, and issued the PIP on February 29, 2024, based on months of documented performance concerns. (SUMF ¶¶ 23-35, 48) The decision to terminate was based on Plaintiff's failure to meet clear, objective metrics in the PIP—acquiring only 32 of 60 required videos. (SUMF ¶¶ 54-56, 59) The performance data supporting termination—SalesForce records,

28

calendar data, email metrics, and video acquisition numbers—were objective and verifiable, not subjective assessments that could be influenced by retaliatory animus. (SUMF ¶¶ 30, 32-33, 53, 55-56)

Moreover, VuMedi's Education team is majority female—Schubsky's direct reports consisted of four females and one male—and Plaintiff's entire leadership chain includes working parents. (SUMF ¶¶ 7-9) These facts demonstrate that performance expectations were uniformly enforced, not selectively applied as retaliation against Plaintiff.

The extensive coaching, mentoring, and PIP process provided to Plaintiff further negates any inference of retaliation. (SUMF ¶¶ 16-17, 23-24, 34-35, 50-52) An employer motivated by retaliatory animus would not invest months of time and resources attempting to help an employee improve before terminating them.

Plaintiff cannot establish that either the PIP or her termination was caused by her alleged complaints. Plaintiff has not and cannot offer any evidence showing that VuMedi's articulated justification was pretextual.

### C.    VuMedi's Legitimate Non-Retaliatory Reasons Cannot Be Rebutted

For the reasons set forth in Point I.A.2-3 above, VuMedi has overwhelming evidence of legitimate, non-retaliatory reasons for termination based on Plaintiff's performance and failure to meet the goals set forth in her PIP. (SUMF ¶¶ 23-35, 48-59) The extensive documentary evidence of poor performance cannot be

explained away by allegations of retaliation. The objective nature of the performance metrics eliminates any reasonable inference that the articulated reasons were fabricated as pretext for retaliation.

The timing and progression of events demonstrate that performance concerns drove the termination decision, not any alleged protected activity. Performance issues were first documented in October/November 2023. (SUMF ¶¶ 23-28) VuMedi followed a careful, documented process of progressively addressing performance issues through coaching and feedback (SUMF ¶¶ 16-17, 23-35), and ultimately a PIP with clear, objective metrics. (SUMF ¶¶ 48-49) When Plaintiff failed to meet those metrics—achieving only 32 of 60 required videos (SUMF ¶¶ 54-56)—VuMedi made the difficult but necessary decision to terminate her employment. (SUMF ¶ 59) This methodical approach is consistent with legitimate business practices and inconsistent with retaliatory motivation.

## POINT III.

## POINT IIIPLAINTIFF IS BARRED FROM RECOVERY UNDER THE AFTER-ACQUIRED EVIDENCE DOCTRINE FOR HER MISCONDUCT DISCOVERED AFTER HER TERMINATION.

Even if Plaintiff could establish a prima facie case of discrimination or retaliation (which she cannot), her recovery must be barred or at minimum severely limited under the after-acquired evidence doctrine based on serious misconduct discovered during the course of this litigation. "Where an employer seeks to rely

30

upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 362–63, (1995)

The after-acquired evidence doctrine permits employers to introduce evidence of employee wrongdoing discovered after termination to limit or bar the remedies available to a plaintiff in an employment discrimination action.

### A.    Legal Standard for After-Acquired Evidence Doctrine

In *McKennon*, 513 U.S. at 352, the Supreme Court held that while after-acquired evidence of employee wrongdoing does not completely bar an employment discrimination claim, it can significantly limit the available remedies. The Court recognized that employers cannot be expected to ignore evidence of serious employee misconduct simply because it was discovered after termination. *Id.* at 362-63.

Under *McKennon*, when an employer discovers after termination that an employee engaged in wrongdoing that would have resulted in termination on legitimate grounds, the employer may use this evidence to: (1) bar reinstatement as a remedy; (2) bar front pay; (3) limit back pay to the period from the date of discharge to the date the employer discovered the evidence sufficient to justify

31

termination; and (4) potentially bar all relief in extraordinary circumstances. *Id.* at 362-63; *see also O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756, 763 (9th Cir. 1996) (employer need only prove by preponderance of evidence that it would have terminated employee for the after-discovered misconduct).

Under the after-acquired evidence doctrine, an employer must establish that: (1) The employee engaged in wrongdoing during the period of employment; (2) The wrongdoing was of such severity that the employee would have been terminated had the employer known of the conduct; and (3) The employer would have terminated the employee based on neutral application of company policies. *McKennon*, 513 U.S. at 362-63. The Third Circuit has applied *McKennon* in employment discrimination cases to limit plaintiff's remedies. *See Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221 (3d Cir. 1994), *vacated and remanded on other grounds*, 115 S. Ct. 1397 (1995).

**B.    VuMedi Discovered Plaintiff's Serious Misconduct During Litigation**

During litigation, VuMedi discovered evidence of deliberate misconduct by Plaintiff that was concealed during her employment and that independently would have resulted in her immediate termination for cause.

**1.    Plaintiff Fabricated Meetings and Attempted to Manipulate a Colleague**

On January 22, 2024, Plaintiff engaged in a calculated scheme to deceive her supervisor about her work activity. When Schubsky inquired about Plaintiff's

32

missing weekly update at 3:25 p.m., Plaintiff responded at 3:31 p.m. claiming she had been on "a call with Mike and a call with a KOL." (SUMF ¶¶ 36-37)

However, Plaintiff had texted Rausch: "u and I had a call at 2pm fyi 😊 ". When Rausch responded "I had nothing on my calendar?", Plaintiff instructed him: "if B asks" and "Put something on the calendar retroactively". (SUMF ¶ 38) Plaintiff then added a calendar invite between her and Rausch from 1-1:30 p.m. and texted Rausch "done". (SUMF ¶ 39)

Rather than admitting the truth when Schubsky noted the retroactively added meetings, Plaintiff provided what appeared to be a detailed account of her supposed conversation with Rausch about "the potential T1 video," as if the meeting had actually occurred. (SUMF ¶¶ 40-41)

Rausch disclosed that no such conversation ever occurred and that Plaintiff had asked him to lie. (SUMF ¶¶ 42-43) Rausch felt uncomfortable because Plaintiff, as a Director, held a position of authority over him. (SUMF ¶ 44) He complained to Lee that Plaintiff had asked him to lie to a superior, placing him in a tough position because she was two levels above him. (SUMF ¶ 45)

VuMedi discovered Plaintiff's fabrication and her attempt to manipulate Rausch during litigation. (SUMF ¶ 46) This revelation establishes critical facts: Plaintiff premeditated the deception, texting Rausch before adding the fake meeting to her calendar; deliberately attempted to manipulate a junior colleague

33

into participating in her dishonesty, exploiting the power dynamic; showed consciousness of guilt about her low productivity by attempting to create false evidence; provided detailed but entirely fabricated information to her supervisor; and violated multiple VuMedi policies regarding honest communication and professional conduct.

### 2.    The Misconduct Warranted Immediate Termination

Plaintiff's deliberate deception and manipulation constitutes misconduct of sufficient severity to warrant immediate termination under VuMedi's policies. Her conduct violated fundamental principles of honest communication, professional integrity, and ethical behavior essential to any employment relationship.

Courts have consistently recognized that employee dishonesty, particularly deliberate fabrication of work activities and attempts to involve others in deception, constitutes grounds for termination that satisfies the *McKennon* standard. *See Milligan-Jensen v. Michigan Technological Univ.*, 975 F.2d 302, 305 (6th Cir. 1992) (falsification of work records justified termination); *Sellers v. Mineta*, 358 F.3d 1058, 1062 (8th Cir. 2004) (dishonesty regarding work activities warranted termination).

VuMedi's Employee Handbook explicitly prohibits dishonest conduct, falsifying records, and interfering with the work performance of others, and

provides that such violations can result in immediate discharge. (SUMF ¶ 47) Plaintiff's conduct violated these express policies.

Plaintiff's attempt to manipulate Rausch demonstrates particularly egregious misconduct. She did not merely engage in isolated dishonesty; she attempted to corrupt a junior colleague's integrity and compromise his professional ethics, exploiting her position of authority as a Director to manipulate someone two levels below her. This conduct strikes at the heart of workplace trust and professional standards.

Had VuMedi known of this conduct when it occurred in January 2024, the company would have immediately terminated Plaintiff's employment for cause. The deliberate nature of the deception, the premeditation evidenced by her text to Rausch, and the attempt to involve another employee in the misconduct all demonstrate conduct fundamentally incompatible with continued employment.

 C. **Application of the After-Acquired Evidence Doctrine**

  1. **Reinstatement, Front Pay, and Back Pay Must Be Barred or Limited**

Reinstatement and front pay are categorically barred when after-acquired evidence establishes that the employee engaged in misconduct warranting termination. *McKennon*, 513 U.S. at 362. Courts consistently hold that an employer cannot be required to reinstate or continue employing an individual who engaged in serious misconduct. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561,

580 (6th Cir. 2000); *Sellers*, 358 F.3d at 1062. Here, Plaintiff's deliberate deception and manipulation of a colleague make reinstatement or front pay wholly inappropriate remedies.

Under *McKennon*, back pay should be limited "to the period between the discharge and the discovery of the after-acquired evidence." 513 U.S. at 361. Plaintiff's termination occurred on April 5, 2024 (SUMF ¶ 58), but her serious misconduct occurred on January 22, 2024—more than two months before her termination. (SUMF ¶¶ 36-45)

VuMedi would have terminated Plaintiff immediately upon learning of her January 22, 2024 fabrication and attempted manipulation of Rausch. Therefore, even if Plaintiff could establish discriminatory termination (which she cannot), her back pay would be limited to zero days given that she was placed on a PIP on February 29, 2024, well after the January misconduct.

2.    **Compensatory and Punitive Damages Should Be Barred or Limited**

Plaintiff's deliberate deception and attempt to manipulate a colleague demonstrate bad faith and dishonesty that should bar or severely limit any claim for emotional distress damages. An employee who engages in calculated misconduct and fabrication while employed cannot credibly claim emotional harm from termination when that termination was precipitated by the employee's own performance failures and compounded by discovered dishonesty. Courts have

36

recognized that a plaintiff's misconduct during employment is relevant to the equities of awarding punitive damages.

She deliberately fabricated work activities to conceal poor performance, premeditated the deception by contacting Rausch before adding fake meetings to her calendar, provided detailed false information to her supervisor, attempted to corrupt a junior colleague by pressuring him to participate in her dishonesty, and exploited her position of authority as a Director to manipulate a subordinate two levels below her. (SUMF ¶¶ 36-45)

This conduct goes beyond typical after-acquired evidence scenarios involving resume fraud or isolated workplace violations. Such egregious conduct may warrant complete denial of relief under the extraordinary circumstances exception recognized in McKennon.

### D.  Plaintiff's Misconduct Provides Independent Grounds for Summary Judgment

Separate from the after-acquired evidence doctrine's limitation on remedies, Plaintiff's discovered misconduct provides an additional, independent ground for summary judgment. Even assuming arguendo that VuMedi's April 5, 2024 termination was discriminatory (which it was not), the discovery of Plaintiff's January 22, 2024 misconduct establishes that VuMedi had legitimate, non-discriminatory grounds to terminate Plaintiff at that earlier date. Any claimed discriminatory animus in the April 2024 termination is rendered moot because

37

Plaintiff's employment should have been terminated in January 2024 for the fabrication incident, and Plaintiff cannot establish causation between any alleged protected activity and her termination when she engaged in terminable misconduct that predated her termination.

## **CONCLUSION**

The undisputed record establishes that no gender discrimination or retaliation exists, while overwhelming documentary proof of legitimate performance-based reasons for termination exists. Plaintiff cannot establish a *prima facie* case of gender discrimination because she has failed to identify any similarly situated male employee who was treated more favorably and cannot point to any evidence giving rise to an inference of unlawful discrimination. The record is devoid of any contemporaneous complaints of discrimination—no emails, no text messages, no witnesses, and no documentation supporting her allegations. Not a single VuMedi employee ever heard Plaintiff complain about discrimination, and not a single employee ever heard any discriminatory comments directed at Plaintiff.

In stark contrast, VuMedi has presented overwhelming, objective evidence of Plaintiff's performance deficiencies: she achieved only 53% of her already-reduced performance goals, maintained an empty calendar in a meeting-intensive role, failed to independently generate leads or partnerships despite extensive

38

coaching, and relied almost exclusively on subordinates to perform her director-level responsibilities. Plaintiff's retaliation claim similarly fails because she never engaged in any protected activity during her eight months of employment. Moreover, VuMedi's discovery of Plaintiff's deliberate fabrication of meetings and her attempt to manipulate a junior colleague into corroborating her lies provides independent grounds for summary judgment and, at minimum, bars any claim for reinstatement, front pay, or back pay beyond January 22, 2024.

For all the foregoing reasons, VuMedi respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

By: _/s/ Qing H. Guo_
Elizabeth F. Lorell, Esq.
Qing H. Guo, Esq.
**GORDON REES SCULLY MANSUKHANI, LLP**
290 W Mt. Pleasant Avenue, Suite 3310
Livingston, New Jersey 07039
Phone No.: (973) 549-2500
Fax No.: (973) 377-1911
Email: elorell@grsm.com
        qguo@grsm.com
*Attorneys for Defendant VuMedi, Inc.*

Dated: November 4, 2025

39