## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DAWN ROACH | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | CASE NO.: 24-7795 |
| v. | : | |
| | : | |
| VUMEDI, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S BRIEF SUPPORT OF HER
## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Dawn Roach ("Ms. Roach"), by and through her undersigned counsel hereby submits the instant Response Brief in opposition to Defendant's Motion for Summary Judgment. Based upon the pervasive material factual disputes at issue, Plaintiff respectfully requests that Defendant's Motion be denied.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:    */s Christine E. Burke*

_____
Christine E. Burke, Esq.
Karpf, Karpf & Cerutti, P.C.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
Phone: (215) 639-0801
Fax: (215) 639-4970
cburke@karpf-law.com

Date: December 22, 2025

**TABLE OF CONTENTS**

I.    PROCEDURAL BACKGROUND……………………………………………………..1

II.   BRIEF SUMMARY OF THE CASE WARRANTING A DENIAL OF THE INSTANT
      MOTION FOR SUMMARY JUDGMENT…………………………………………1

III.  LEGAL ANALYSIS…………………………………………………………………4

      a.  Summary Judgment Standard……………………………………………..4

      b.  Legal Argument…………………………………………………………...6

      1.  Ms. Roach Presents Sufficient Evidence such that a Jury Could Find She was
          Discriminated against Due to her Gender in violation of Title VII & the LAD………6

          i.    Direct Evidence of Gender Discrimination………………………………..6

          ii.   Prima Facie Case of Gender Discrimination…………………………….10

          iii.  Evidence of Pretext – Such that a Jury Could Disbelieve VuMedi's
                Reason for Separation……………………………………………………14

      2.  Ms. Roach Presents Sufficient Evidence to Proceed with her Retaliation Claims
          under Title VII and the LAD…………………………………………………19

          i.    Ms. Roach Engaged in Legally Protected Activity………………………20

          ii.   There is Sufficient Evidence of a Causal Connection between Ms. Roach's
                January 17, 2024 and March 2024 Complaints to her April 5, 2024 Termination,
                and Sufficient Evidence of Pretext……………………………………22

      3.  VuMedi's Arguments as to the "After Acquired Evidence" Defense are one for a
          jury, as they are obligated to sustain their burden of proof on this Affirmative
          Defense……………………………………………………………………..26

IV.   CONCLUSION…………………………………………………………………….31

Plaintiff, Dawn Roach ("Ms. Roach"), by and through her undersigned counsel, hereby responds as follows to Defendant's Motion for Summary Judgment:

## I.   PROCEDURAL BACKGROUND

On July 16, 2024, Ms. Roach filed the instant lawsuit against her former employer VuMedi Inc. ("Defendant" or simply "VuMedi"), asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I)(for gender discrimination and retaliation), and the New Jersey Law against Discrimination ("NJLAD") (Count II)(for gender discrimination and retaliation). Dkt. No.: 1.[1]  VuMedi filed its Answer on September 16, 2024. Dkt. No.: 5. The case proceeded through extensive fact discovery during the course of 2025 up through July 5, 2025.  Dkt. No.: 27. Defendant ultimately filed its *untimely* Motion for Summary Judgment on November 4, 2025.  Dkt. No.: 38.[2] Plaintiff now responds *herein*.

## II.   BRIEF SUMMARY OF THE CASE WARRANTING A DENIAL OF THE INSTANT MOTION FOR SUMMARY JUDGMENT[3]

The Parties in this case literally have two competing versions of events for a jury to decide. VuMedi *never once* documented a single performance concern about Ms. Roach *until after* she protested blatant discriminatory remarks made by her boss. VuMedi a.) denies that Ms. Roach's direct supervisor –Senior Medical Director Bernardo Schubsky – made the remarks at issue and b.) denies Ms. Roach ever escalated those concerns to her Senior Manager – General Manager Desirae Hazen – who was intimately involved in the decision to terminate only weeks later.

---

[1] A copy of the Complaint is attached hereto as "Exhibit T."

[2] Defendant filed an untimely Motion (Dkt Nos.: 36, 37, 39).

[3] Ms. Roach submitted a Counter Statement of Material & Disputed Facts, Setting forth the issues in dispute (and responded separately to VuMedi's "undisputed" facts).

1

The comment at issue was not some "stray remark," but rather a statement by Ms. Roach's male boss evincing a clear *discriminatory misperception* that Ms. Roach – as  a mother –simply could not complete the tasks at hand nor put in the hours needed to do the job because she was a working mom.  This type of comment constitutes "direct evidence" of gender discrimination.[4] The comment was made Dr. Bernardo Schubsky during a "one on one" meeting  where he told Ms. Roach she wouldn't generate as many sales as others because as a mom, she can't work long hours or overtime. This comment, made when discussing her work expectations in a routine 1:1 business meeting, is directly probative to the decision maker's state of mind and motivations for seeking to aggressively coach her on a PIP and part ways shortly thereafter.

VumMedi's briefing is peppered with assertions that it has not been the subject of prior discrimination complaints, has a healthy female presence in the workplace, and no one else *corroborates* the conversation between Ms. Roach had with her supervisor, or no one corroborates that she escalated this incident as a complaint of discrimination to Schubky's boss (Hazen). VuMedi can argue these points to a jury as probative to their defenses. However, asking this Court to conclude as a *matter of law* that i.) the overt discriminatory remark was not made and has no bearing on the decision-maker's intent, and ii.) Ms. Roach didn't complain simply because it

---

[4] *See, e.g., Chadwick v. WellPoint, Inc*., 561 F.3d 38, 44-45, 47 (1st Cir. 2009) (comment to employee that "you have the kids and a lot on your plate right now" supports an inference of gender discrimination because it suggests that as a woman she will neglect her job responsibilities in favor of her child care responsibilities); *Tingley-Kelley v. Trs. of the Univ. of PA*., 677 F. Supp.2d 764, 777-78 (E.D. Pa. 2010) (Comments such as "concerned about how she'll do in school esp. w/family, etc.," "it will be a tough row to hoe," and "a lot on her plate," support an inference of sex-based discrimination."); *and see Zaengle v. Rosemount, Inc*., No. 08-2010, 2014 U.S. Dist. LEXIS 9991, at *15 (E.D. Pa. Jan. 28, 2014)(finding comment: "I am concerned, however, as to how she will be able to continue to balance her personal life with a very demanding work load, with the addition of another family member soon. If anyone can do this, it is Kate!" was "relevant to plaintiff's allegation that later, in 2006, Mr. Thomas discriminated against her because she is a woman. The remark was made in writing by Mr. Thomas in the context of evaluating plaintiff's job performance. It is probative of Mr. Thomas' intent or state of mind. Furthermore, a reasonable juror could view the remark as discriminatory.").

2

wasn't brought to HR's attention or memorialized in writing – would be erroneous.  A jury will determine whether they *credit* that the remark was made, whether it substantially tainted Dr. Schubsky's ability to objectively evaluate Ms. Roach's performance –without regard for her gender, and whether it was escalated to Hazen as Ms. Roach claims.

This employee had received absolutely no discipline; the record is devoid of same. [5]   On January 17, 2024 -- during a "one on one" in person meeting in Minnesota (the company headquarters), Dr. Schubsky made this remark.  Ms. Roach told Schubsky the remark was wholly inappropriate and offensive to her as a woman.  Schubsky recommended a PIP a few weeks later, which was formally presented to Ms. Roach on February 29, 2024. Ms. Roach spoke with Hazen about the PIP in a zoom meeting, in early March 2024, and claims she explicitly told Hazen she felt she was being discriminated against by Schubsky, that he had made condescending comments and she felt she was being discriminated against by him for being a mother.  Ms. Roach also relayed to all involved she felt the PIP contained numerous inaccuracies, and she was being held to a different video goal than her respective teammates (who achieved metrics based upon collaborative *team efforts*, whereas Mr. Roach was now being held to "individual" goals).

Though Ms. Roach did everything asked of her under the PIP, VuMedi moved to terminate at the conclusion of the 30-day PIP, effectuating her termination on April 5, 2024.  The Company then presented an <u>unsolicited general release</u> for her to sign, asking that she waive all claims of discrimination and retaliation against the company.  It is admitted there is no evidence in the record VuMedi has a policy providing for severance in connection with terminations for performance.

---

[5] A quick review of Defendant's Statement of Facts and Ms. Roach's Responses thereto demonstrates *all* of Defendant's allegations of claimed performance issues <u>are strictly based upon self serving testimony a jury could wholly reject</u>.  VuMedi used email and slack as a regular means of communication.  VuMedi was not able to attach a single email or slack message showing ANY concerns management had with Ms. Roach until *after* Schubsky made a remark about Ms. Roach not being able perform in her role as a mother, and then recommended a PIP in February of 2024. This evidence alone speaks to i.) pretext and ii.) the credibility of Defendant's claimed reasons for separation.

The release was proffered **only** in light of her allegations against Dr. Schubsky – one of their new Medical Directors. While VuMedi vehemently denies the incident and internal complaints provoking this release – that is for a jury to decide.

These material factual disputes here go directly to issues of intent, credibility, and pretext. Summary judgment is simply not appropriate in this case, and therefore should be denied.

### III.    LEGAL ANALYSIS

#### a.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.; *See also Gonzalez v. Sec'y of Dept of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). "[O]n summary judgment, the inferences to be drawn from the underlying facts … **must be viewed in the light most favorable to the party**

4

**opposing the motion**." *Matsushita Elec. Indus. Co., Ltd.* 475 U.S. 574 at 587-588 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.'"" *Spiewak v. Wyndham Destinations, Inc.*, Civil Action No. 20-13643 (KMW-EAP), 2023 U.S. Dist. LEXIS 14473, at *9 (D.N.J. Jan. 26, 2023); (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.' *Chipollini v. Spencer Gifts*, 814 F.2d 893, 899 (3d Cir. 1987); *Walden v. St. Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (same).

Employment discrimination cases center around a single question: *why did the employer take an adverse employment action against plaintiff*? As the Third Circuit has long recognized, this question "is clearly a factual question," and therefore "summary judgment is in fact rarely appropriate in this type of case." *Chipollini*, 814 F.2d at 899. Moreover, the Third Circuit has expressly stated that it applies the standards for summary judgment with "added rigor in employment discrimination cases, where intent and credibility are crucial issues. *Stewart v. Rutgers State Univ.*, 120 F.3d 426, 431 (3d. Cir., 1997). [6]

In deciding the merits of a party's motion for summary judgment, the court's role is not to

---

[6] Another Circuit Court of Appeals has explained that there is a high standard for granting summary judgment in employment discrimination cases, stating, "we require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by the factfinder, upon a full record." *Johnson v. Evangelical Lutheran Good Samaritan Society,* WL 2030834 (D. Or. 2005), citing, *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir) (internal citations and quotations omitted), *cert denied,* 519 U.S. 927, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996). *See also Womack v. Shell Chemical Co*., 514 F.Supp. 1062 (D.C. Ala. 1981)("The court is cognizant that summary judgment is "especially questionable" in employment discrimination cases, because such cases necessarily involve examining motive and intent).

5

evaluate the evidence and decide the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In doing so, the Court may not make credibility determinations or weight the evidence; instead, the nonmoving party's evidence "is so to be believed, and all justifiable inference are to be drawn in [her] favor." (*quoting Anderson*, 477 U.S. at 255); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). As reaffirmed in *Day v. N.J. Dep't of Corr.*, Civil Action No. 21-9986, 2024 U.S. Dist. LEXIS 182293, at *6 (D.N.J. Aug. 30, 2024), summary judgment is appropriate only where the record reveals no genuine dispute as to any material fact and the moving party is entitle to judgment as a matter of law.

In cases such as the present one, the question for the court is whether the record "could support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence necessarily leads to that conclusion that the employer did act for discriminatory reasons." *Chipollini*, 814 F.2d at 900; *see also Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### b. Legal Argument

### 1. Ms. Roach Presents Sufficient Evidence such that a Jury Could Find She was Discriminated against Due to her Gender in violation of Title VII & the LAD[7]

#### i.) Direct Evidence of Gender Discrimination

A plaintiff may sustain a Title VII discrimination claim by presenting direct evidence of gender discrimination **or** by using circumstantial evidence that would allow a reasonable factfinder to infer discrimination. *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n. 4 (3d Cir. 1995); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (establishing framework for mixed motive cases that

---

[7] Courts typically analyze LAD and Title VII claims under the same legal analysis. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087-88 (3d Cir. 1996) (finding that New Jersey LAD claims "parallel" Title VII claims).

involve direct evidence); *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (establishing framework for pretext cases that involve circumstantial evidence).

Direct evidence "must be such that it demonstrates that the 'decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'" *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 513 (3d Cir. 1997) (quoting *Price Waterhouse*, 490 U.S. at 277 (O'Connor, J. concurring)). The fired employee may rely on circumstantial evidence if it can "fairly be said to directly reflect the alleged unlawful bias." *Id.* (citing *Hook v. Ernst & Young*, 28 F.3d 366 (3d Cir. 1994) (other citations omitted).

"Direct evidence of discrimination is often not easy to come by." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017). Direct evidence of discriminatory intent consists of "evidence which, if believed, proves the fact [of discriminatory animus] *without inference or presumption*." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) (alteration in original) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)). "Racist or sexist statements constitute such 'direct evidence' of discrimination." *Id.* (quoting *Godwin*, 150 F.3d at 1221). Direct evidence need not be "specific and substantial." *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005).

Where a plaintiff presents sufficient direct evidence, the Court need not consider whether that claim may proceed under a *McDonnell Douglas* theory. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) ("'The McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.'") (alteration in original) (*quoting Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985))."

7

"Direct evidence" means evidence sufficient to allow the jury to find that "the 'decision makers placed substantial negative reliance on illegitimate criterion in reaching their decision" ' to fire him." *Connors v. Chrysler Fin. Corp.,* 160 F.3d 971, 976 (3d Cir.1998) (quoting *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775); *see also Anderson v. Consol. Rail Corp.,* 297 F.3d 242, 248 (3d Cir.2002) (same). Such evidence "leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it" when he made the challenged employment decision. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1097 (3d. Cir.1995).

The comments at issue here were made *by the decision maker*  - made during a meeting regarding performance expectations, and weeks before the same decision maker issued a formal PIP, and then decided to terminate under that same exact PIP.  The record reflects Ms. Roach is a mother of four (4) young children, which was the case at all times during her employment with VuMedi. Pl SOF, at 1. (To wit, Mr. Roach's children's ages at the time of her deposition were 13, 10, 3 and 3).  Pl. Dep., at p. 7:9-16.

Ms. Roach had an in-person "one on one" meeting with Schubsky on January 17, 2024 at the company's headquarters in Minnesota.[8]  During that meeting, the two discussed a number of opportunities Ms. Roach had as well as the number of opportunities he had.  *Id.* at p. 171:9-172:3. Schubsky stated that while they started around the same time, and she should be "further along in the process," he didn't expect her to be because he knows shes a mom, has kids to take care of, and he doesn't expect her to work the hours that he does.  Pl. Dep., at p. 171:9-19.  Schubsky vehemently denies that he said anything of the sort (let alone that Ms. Roach took something the wrong way). Schubsky Dep., at p. 56:3-8.  This alone is sufficient evidence to permit a jury to

---

[8] Pl. Dep., a p. 170:10-15; Exhibit R, at Response No.: 5; Exhibit S, at Supplemental Response No.: 5.

determine that Schubsky did not want Ms. Roach working on his team – as **he admittedly did not believe as a mother, she was capable of giving him the desired hours (and thus outcome) required for this job**.

In response to this blatantly discriminatory sexist remark, Ms. Roach told him she did not think it was appropriate to be making that comment about a woman and that she was offended by it.[9] Remarkably, despite being a "mom," Ms. Roach put in extensive hours during her time at VuMedi, as her schedule varied greatly including weekend work – depending upon when contributors were able to record. Ms. Roach attests she typically began working in the morning between 9:00am-10:00am and worked consistently until 5:00pm-6:00pm.[10] Ms. Roach also worked evening hours depending on what project needs dictated. *Id.* While Ms. Roach typically worked Monday-Friday, she also worked over the weekend if needed. For example, if she had a recording on a Saturday, or she may work Sunday nights to prepare for her (regularly scheduled) 1:1 Monday meetings with Bernardo Schubsky. *Id.*

If the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee - put differently, if changing the employee's sex would have yielded a different choice by the employer - a statutory violation has occurred. *Bostock v. Clayton Cty.*, 590 U.S. 644, 659-60, 140 S. Ct. 1731, 1741 (2020). Title VII's message is "simple but momentous": An individual employee's sex is "not relevant to the selection, evaluation, or compensation of employees." *Price Waterhouse v. Hopkins*, 490 U. S. 228, 239, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (plurality opinion).

Hazen confirmed in her deposition she had not role in drafting the PIP at issue – that was

---

[9] *See* Pl. Dep., at pp. 171:24-172:3; Exhibit R, at Response No.: 8.

[10] Ex. S, at Supplemental Response No.: 4.

9

done by Dr. Schubsky.  Hazen Dep., at pp. 51:22-52:2.  Dr. Schubsky determined if Ms. Roach was meeting or not meeting the goals set forth under the PIP, and thus had conversations with Hazen recommending her termination.  Schubsky Dep., at p. 105:7-15, 23-106:6; Hazen Dep., at p. 59:12-60:5)(Q: "How were you involved in the decision to terminate Ms. Roach? A: I was involved in the conversations that – basically Bernardo was coming to me, letting me know that she was not meeting her goals.").

In *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 722 (E.D. Pa. 2021), a District Court explained how less direct gender based comments created an inference of discrimination:

> [A]n employer's gender-based remarks "do not inevitably prove that gender played a part in a particular employment decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). Rather, to determine the probative value of employer remarks, courts examine the circumstances in which the statements were made, including: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." *Connolly v. Pepsi Bottling Grp., LLC*, 2008 U.S. Dist. LEXIS 72279, 2008 WL 4412090, at *11 (W.D. Pa. Sept. 22, 2008) (citing *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)). Here, the remarks were made by the Department Chair, who also played a key role in Mammen's termination. They were directed specifically at Mammen, during a meeting in which Mammen testified that she raised gender discrimination concerns. They were made mere months before the termination decision. The content of the statements, moreover, permits an inference of gender bias. A jury could infer, for instance, that Christopher believed Mammen less deserving of her position because she was a woman and found her complaints against the Department offensive for that reason. While these remarks may (or may not) on their own be sufficient to support an inference of gender discrimination, they are nevertheless probative of gender bias. *See Price Waterhouse*, 490 U.S. at 251."

*Id.*  (remarks at issue were: supervisor told her that "he's sick of hearing how women have it worse" and "sick of having the woman discussion," and that she should be more "grateful" and say "thank you" more often.").

### ii.)    ***Prima Facie Case*** **of Gender Discrimination**

Even if Ms. Roach's claim is not analyzed under a direct evidence analysis, <u>which Plaintiff</u>

submits it should be – she has sufficient circumstantial evidence to proceed to a jury. To make out

a prima facie claim for employment discrimination, a Title VII plaintiff must show (1) she belongs

to a protected class, (2) she was qualified for the position in question, (3) she was subjected to an

adverse employment action, and (4) the existence of circumstances which give rise to an inference

of prohibited discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101

S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *Sarullo v. United States Postal Serv.,* 352 F.3d 789, 797-98

(3d Cir. 2003); *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 357 (3d Cir. 1999).[11]

Ms. Roach has presented sufficient evidence to establish a *prima facie* case of gender

discrimination under Title VII/ the LAD.  VuMedi does not dispute that Ms. Roach, as a female

employee, is a member of a protected class, nor that she was qualified for her Director of Medical

Education position based on her prior experience and performance in the pharmaceutical field.

The comments at issue, if not deemed "direct evidence"  -- still suffice to establish

sufficient evidence that Ms. Roach was terminated under circumstances giving rise to an inference

of gender discrimination.  A 9th Circuit Court of Appeals reversed a district court for failing to

consider gender discriminatory comments directly related to the employee's ability to do her job:

Here, the comments by Wood's supervisor are sufficient direct evidence of discriminatory motive

to raise a genuine question of material fact regarding his reasons for terminating her. A finder of

fact could reasonably construe the supervisor's comments as expressing a gender stereotype

motivated by an unlawful bias.  Moreover, the supervisor's statements were not general expressions

---

[11] "Gender discrimination claims, like retaliation claims, are analyzed under the *McDonnell Douglas* burden shifting framework. To establish a *prima facie* case of gender-based employment discrimination, [a plaintiff] must show: (1) she is a member of a protected class; (2) she held the qualifications for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances which could give rise to an inference of intentional discrimination." *Finizie v. McDonough*, No. 21-5586, 2022 U.S. Dist. LEXIS 178411, at *24-25 (E.D. Pa. Sep. 30, 2022).

of stereotypical viewpoints, but could be construed as directly related to whether Wood could perform her job. *Wood v. Wick Communs. Co.*, 32 F. App'x 403, 405 (9th Cir. 2002); *and see Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 70 (S.D.N.Y. 2015)(denying motion to dismiss where plaintiff made "allegations that a senior executive made several arguably discriminatory statements, combined with his allegations that a woman assumed most of his duties, are enough," including wanting to staff team with women and a "girl power" team). Even in other types of discrimination cases, Courts recognize a fact issue pertaining to intent where comments are made about a specific class in favor of other workers outside that class. *And See, e.g., Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 44-45, 47 (1st Cir. 2009) (comment to employee that "you have the kids and a lot on your plate right now" supports an inference of gender discrimination because it suggests that as a woman she will neglect her job responsibilities in favor of her child care responsibilities); *Tingley-Kelley v. Trs. of the Univ. of PA.*, 677 F. Supp.2d 764, 777-78 (E.D. Pa. 2010) (Comments such as "concerned about how she'll do in school esp. w/family, etc.," "it will be a tough row to hoe," and "a lot on her plate," support an inference of sex-based discrimination."); *and see Zaengle v. Rosemount, Inc.*, No. 08-2010, 2014 U.S. Dist. LEXIS 9991, at *15 (E.D. Pa. Jan. 28, 2014)(finding comment: "I am concerned, however, as to how she will be able to continue to balance her personal life with a very demanding work load, with the addition of another family member soon. If anyone can do this, it is Kate!" was "relevant to plaintiff's allegation that later, in 2006, Mr. Thomas discriminated against her because she is a woman. The remark was made in writing by Mr. Thomas in the context of evaluating plaintiff's job performance. It is probative of Mr. Thomas' intent or state of mind. Furthermore, a reasonable juror could view the remark as discriminatory.").

Separately, **a male employee was hired to absorb all of Ms. Roach's job duties**.

12

Schubsky Dep., at p.  In lieu of maintaining the title "Director of Medical Education," (which was admittedly a management level title in between Dr. Schubsky and Sonja Lee), Schubsky made the decision *to shift all of Ms. Roach's video targets to a male* employee, who was hired to take over Ms. Roach's workload.  Schubsky Dep., at pp. 109:14-110:17.  This was the cardiometabolic manager under primary care, Kolton Jacobson. Hazen Dep., at p., 62:20-25 ("Q: who has assumed Ms. Roach's job duties at this point in time? A: We have hired a person named Kolton Jacobson. Q: And what is Kolton Jacobson's gender? A: Male").

This type of evidence satisfies the *prima facie* case, especially coupled with the fact that Dr. Schubsky didn't think a mother could handle the role nor put in the type of hours he thought were needed for same.  *See, e.g., Grassmyer v. Shred-It USA, Inc.*, 392 Fed. Appx. 18, 27 (3d Cir. 2010) (holding that a prima facie case was established where plaintiffs, who were qualified female sales representatives, were both discharged and replaced by men). "<u>Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement</u> or the more favorable treatment of similarly situated colleagues outside the relevant class." *Wooler v. Citizens Bank*, No. 06-1439, 2006 Dist. LEXIS 86606, at \*16 (E.D. Pa. 2006). "Many courts in this circuit have found that replacing a plaintiff with an individual outside of the plaintiff's protected class may give rise to an inference of unlawful discrimination. *See, e.g., Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007)." *Philmon v. Lincoln Univ.*, No. 21-1368, 2023 U.S. Dist. LEXIS 9095, at \*18 (E.D. Pa. Jan. 19, 2023)(citations in original).  "Following these cases, I will assume that such evidence is sufficient for purposes of making out a *prima facie* case of gender discrimination, and therefore I will continue with the analysis of Plaintiff's claim." *Id.*

To the extent VuMedi intends to argue Ms. Roach wasn't "replaced," since they did not

13

hire a new "Director of Education," this argument is severely misplaced for analyzing a *prima facie* case. *See e.g. Green v. Univ. of Miss.*, No. 3:24-CV-233-SA-JMV, 2025 U.S. Dist. LEXIS 255637, at *11 (N.D. Miss. Dec. 10, 2025)("Applying the analysis in *Young* and *Howard*, this Court finds the University's argument unpersuasive. **[Plaintiff] can show she was "replaced" when others not in her protected class assumed her duties. Because the record reflects that only Green's specific position was eliminated and her duties were assumed by someone outside her protected class, she has established for summary judgment purposes that she was "replaced."**)(distinguishing reduction in force "RIF" cases, where the issue of a "replacement" is a different inquiry).

The evidentiary burden at the *prima facie* stage is "rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent--i.e., that discrimination *could* be a reason for the employer's action." *Marzano v. Computer Science Corp.*, 91 F.3d 497, 508 (3d Cir.1996)); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207, 215 (1981)(describing burden of establishing a *prima facie* case as "not onerous"); *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir.1994) (describing *prima facie* case as [**967] "relatively simple")(quoting *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 825 (3d Cir.1994)); *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 118 (3d Cir.)(describing *prima facie* case as "easily made out"), *cert. denied,* 464 U.S. 937, 104 S. Ct. 348, 78 L. Ed. 2d 314 (1983); *Peper*[, *supra*, 77 N.J. at 81], 389 A.2d 465-47877 N.J. 55, 389 A.2d 465, 478 . . . (writing "the standard for presenting a *[p]rima facie* case cannot be too great lest rampant discrimination go unchecked.")

  **iii.) Evidence of Pretext -- Such that a Jury Could Disbelieve VuMedi's Reason for Separation**

Once Ms. Roach establishes her *prima facie* case, the burden shifts to VuMedi to establish

14

a legitimate non-discriminatory reason (which here – they claim was failure to meet quarterly video goals and failure to perform under the PIP at issue), and then the burden shifts back to Ms. Roach to adduce sufficient evidence that the defendant's explanation lacks credibility or that discrimination/retaliation is the more likely motive, a case is made for pretext. *See Texas Dept. of Community Affairs v. Burdine*, 101 S.Ct. 1089, 1095 (1981). **Once the plaintiff produces evidence sufficient to permit the factfinder to disbelieve the defendant's explanation for its actions, summary judgment is not appropriate because "[i]ssues of fact and sufficiency of evidence are properly reserved for the jury**." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir. 1993).

A jury need not credit that Dr. Schubsky issued the PIP for *any other reason* other than his <u>stated concerns that Ms. Roach could not handle her job duties as a mother</u>. These are legal admissions, that speak directly to his intent. Accepting Ms. Roach's facts as true and in a light most favorable to her, Dr. Schubsky did not think she could put in the hours because she was a mother – and then he hired a male employee to take over her case load. This record evidence alone is a case of pretext. VuMedi touts evidence "it" made the decision to hire her, knowing she was female. However, the record evidence shows that Dr. Schubsky had *nothing to do with hiring Ms. Roach*. He wasn't even employed at VuMedi when Ms. Roach was chosen for hire by Hazen and Giverts (CEO).

In terms of <u>documented</u> performance - at the end of Q4 – and by email dated January 4, 2024, Ms. Roach was doing *well* in her role, she met goals and was treated the same as all other members, *wherein* goals were shared and everyone collaborated to bring in videos. On January 3, 2024, Schubsky messaged Ms. Roach as follows:

Happy 2024! Congratulations on achieving your Q4 acquisition goal! Let's discuss Q1

15

[with a smiley face].

*See* Exhibit K. After the January 17, 2024 conversation with Ms. Roach in Minnesota, Dr. Schubsky began preparing a PIP, which was presented on February 29, 2024. A fact finder need not even credit that a.) Ms. Roach was suffering from any performance issued as **all evidence supporting that is strictly self serving testimony by Defendant's employees**. This is a credibility issue. Apart from that, a fact finder need not credit b.) that the PIP was meant to make Ms. Roach successful, vs. substantially increase her video goal count, over everyone else on the team who could share video counts based upon team efforts. Ms. Roach vehemently disagrees with the allegations in the PIP, including the following being false or simply misleading: Moreover, Ms. Roach contends that the following statements contained in PIP were quite literally false or misleading:

- Re: "Specific target regarding number of video acquisition and partnerships was missed" – in Q4 of 2023, Ms. Roach hit her goal for both number of videos and partnerships. Moreover, in Q1 of 2024 she exceeded her original goal given to her at the beginning of the quarter based on the <u>original parameters</u> set forth as Q1 targets;

- Re: "Relying on other teammates" – Ms. Roach had a combined goal with Sonja Lee for Q4 of 2023 and they were directed *to work together in order to hit this goal*;

- Re: "Rarely active on slack during work hours" – Ms. Roach quite literally worked while she was on PTO over Christmas break to ensure she hit her goals. Ms. Roach even communicated with Schubsky during this time so that he was aware that she was working while on PTO. Ms. Roach recalls that she regularly worked late evening hours between 9:00 pm and 12:00am and emailed Schubsky so that he was aware and saw that she was active;

- Re: "Lack of responsiveness to internal communications" – Ms. Roach claims that she always responded to emails or slack messages in a timely manner. Ms. Roach was able to receive notifications on her phone for both emails and slack messages; and

16

- Re: "Email sends and opportunity lower than peers" – Ms. Roach's focus was Diabetes and Obesity <u>only</u>. Ms. Roach's peers had *entire specialties comprised of multiple disease states* allowing for more opportunities, more targets, and more emails to send and/or generate.

Exhibit R, at Response No.: 9. *See Windham v. Time Warner, Inc.*, 275 F.3d 179 (2nd Cir. 2003)(finding sufficient evidence of pretext where there was a factual dispute as to whether the plaintiff actually engaged in the performance concerns claimed by the employer)*; and see Hernandez v. Spacelabs Med., Inc.* 343 F.3 1107 (9th Cir. 2003)(reversing grant of summary judgment where plaintiff was able to sufficiently dispute errors forming alleged basis of termination from employment).

While VuMedi claims now in litigation that individuals were making "complaints" about her, including Sonja Lee – Sonja was literally texting Ms. Roach in real time informing her that she was working very hard, expressly telling her on March 11, 2024: "you're clearly working hard toward your shit **<u>like you always have</u>**." Exhibit W (emphasis added). On March 26, 2024, when Ms. Roach had obtained 77 videos for the organization, Ms. Lee wrote to her: "GREAT WORK." *Id.*, at p. 452-453. These contemporaneous messages contradict the notion this employee was making complaints about her progress of capturing videos.

To add insult to injury – this employee was terminated for *purported performance reasons*. A rationale juror is permitted to consider VuMedi's insistence upon a full release of claims, including those for discrimination and retaliation. VuMedi's reliance on cases such as *Baker*, *Arenas*, *MCI Int'* and *Didier*[12] to avoid the implications of this release -- are simply misplaced. Those cases merely stand for the proposition that a severance offer, <u>standing alone</u>, does not establish discrimination. Here, however, the severance offer was offered contemporaneously with

---

[12] *Baker v. United Def. Indus., Inc.*, 403 F. App'x 751, 757 (3d Cir. 2010); Arenas v. L'Oreal USA Prods., Inc., 790 F.Supp.2d 230, 238–40 (D.N.J. 2011); *E.E.O.C. v. MCI Int'l, Inc.*, 829 F.Supp. 1438, 1462–63 (D.N.J. 1993); *Didier v. Dow Jones Co.*, No. CIV. 13-0176. FLW, 2014 WL 4094920, at *15 (D.N.J. Aug. 18, 2014).

17

Ms. Roach's termination and expressly conditioned on waiving potential claims of discrimination and retaliation. Exhibit U, at provision 6(b). When an employer offers severance at the moment of termination, particularly when conditioned on a release of potential discrimination claims, courts have recognized such conduct *as probative of pretext and inconsistent with a purportedly legitimate discharge*, allowing an inference of retaliatory or discriminatory motive. *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. May 22, 2013)(an employer who offered severance when policies did not require upon condition of waiving FMLA claim supported finding of pretext in FMLA claim among other facts); *Husok v. NP Red Rock, Ltd. Liab. Co.*, No. 2:20-cv-01939-KJD-DJA, 2025 LX 125875, at *4-5 (D. Nev. June 13, 2025) (denying motion to exclude evidence of severance package offered contemporaneously with termination and before retaliation claim was asserted); *cf. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-92 (9th Cir. 2000) (distinguishing post-claim settlement offer from severance offer made at termination).[13]  This severance offered should be considered and *weighed* with all of the other evidence, including the discriminatory remark, issuance of PIP with no history of prior discipline or counseling, and then a PIP which was grossly inaccurate.

A plaintiff's prima facie case of discrimination, combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2104–05, 530 U.S. 133, 140–41 (U.S.,2000); *and see Kline v. TVA,* 128 F.3d 337 (C.A.6 1997)(prima facie case combined with sufficient evidence

---

[13] *See e.g. Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)("Severance pay packages contingent upon a release of claims which are offered contemporaneously with the notice of termination are not covered by [Rule 408]", and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *6 (W.D. Wash. June 2, 2011*); EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy)."

to rebut employer's explanation always creates jury issue of whether employer intentionally discriminated); *Combs v. Plantation Patterns,* 106 F.3d 1519 (C.A.11 1997) (same), cert. denied, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998); *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061 (C.A.3 1996) (same) (en banc), cert. denied, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104(CA8) (same), cert. denied, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (C.A.7 1994) (same); *Washington v. Garrett,* 10 F.3d 1421 (C.A.9 1993) (same), with *Aka v. Washington Hospital Center,* 156 F.3d 1284 (C.A.D.C.1998) (en banc) (plaintiff's discrediting of employer's explanation is entitled to considerable weight, such that plaintiff should not be routinely required to submit evidence over and above proof of pretext), and with *Fisher v. Vassar College,* 114 F.3d 1332 (C.A.2 1997) (en banc) (plaintiff must introduce sufficient evidence for jury to find both that employer's reason was false and that real reason was discrimination), cert. denied, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989 (C.A.5 1996) (same); *Theard v. Glaxo, Inc.,* 47 F.3d 676 (C.A.4 1995) (same); *Woods v. Friction Materials, Inc.,* 30 F.3d 255 (C.A.1 1994) (same).

### 2. Ms. Roach Presents Sufficient Evidence to Proceed with her Retaliation Claims under Title VII and the LAD

To state a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (same).

Defendant strictly contests i.) that Ms. Roach engaged in protected conduct, and ii.) causal

connection. For the reasons discussed below, Ms. Roach presents more than sufficient evidence to demonstrate these two (2) elements.

### i.) Ms. Roach Engaged in Legally Protected Activity

To engage in protected activity, the employee must either participate in certain Title VII proceedings (the participation clause) or oppose discrimination made unlawful under Title VII (the opposition clause). *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 341 (3d Cir. 2008). Protected activity includes both informal protests under the opposition clause, as well as filing formal charges through the EEOC (pursuant to the participation clause). "Protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct. <u>A plaintiff is not required to prove the merits of an underlying discrimination complaint to prove a cause of action for retaliation</u>. However, plaintiff must demonstrate that she was acting in good faith and under a reasonable belief that a violation existed." *See Warmkessel v. E. Penn Mfg. Co.*, 2005 U.S. Dist. LEXIS 15048 (E.D. Pa. July 28, 2005)(J. James Knoll Gardner citing)(*Aman v. Cort Furniture Rental Corporation*, 85 F.3d 1074, 1085 (3d Cir. 1996)).

> The anti-retaliation provision of Title VII provides, in pertinent part:
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because *he has opposed any practice* made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a) (emphasis added).

It is well established that making **<u>even verbal complaints</u>** to management about activities prohibited by Title VII/the LAD constitute protected activity. *See e.g. Baker-Bey v. Pennsylvania Dept. of Corrections*, WL 2856397 (E.D. Pa. 2008)(verbal complaints to management are protected activity); *See also Burton v. Pennsylvania Board of Probation and Parole,* No. 02-2573,

2002 WL 1332808, at * 5 (E.D.Pa. June 13, 2002); *Abramson v. William Paterson Coll. of New Jersey,* 260 F.3d 265, 288 (3d Cir.2001)); *Sgro v. Bloomberg L.P*., 331 Fed.Appx. 932, (3d Cir. 2009)(verbal complaint that did not mention discrimination but likened plaintiff to another older employee who was disfavored in lieu of younger employee constituted protected activity); *Seybert v. International Group*, Inc., WL 722291 (E.D. Pa. 2009)(employees statement to manager that she felt uncomfortable when he stared at her breasts engaged in protected activity).[14]

The record facts, which must be accepted as true and in a light most favorable to Ms. Roach are as follows:

1. Ms. Roach had an in-person "one on one" meeting with Schubsky on January 17, 2024 at the company's headquarters in Minnesota. Pl. Dep., a p. 170:10-15; Exhibit R, at Response No.: 5; Exhibit S, at Supplemental Response No.: 5.  During that meeting, the two discussed a number of opportunities Ms. Roach had as well as the number of opportunities he had. *Id.* at p. 171:9-172:3.  Schubsky stated that while they started around the same time, and she should be "further along in the process," he didn't expect her to be because he knows shes a mom, has kids to take care of, and he doesn't expect her to work the hours that he does. Pl. Dep., at p. 171:9-19. **In response to this blatantly discriminatory sexist remark, Ms. Roach told him she did not think it was appropriate to be making that comment about a woman and that she was offended by it**. *See* Pl. Dep., at pp. 171:24-172:3; Exhibit R, at Response No.: 8; and

---

[14] In addition, Plaintiff provides the following relevant caselaw on this issue to establish this element.  To engage in protected activity, the employee must either participate in certain Title VII proceedings (the participation clause) or oppose discrimination made unlawful under Title VII (the opposition clause). *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 341 (3d Cir. 2008).  For either clause, "the employee must hold an objectively reasonable belief, in good faith, that the activity he oppose[s] is unlawful under Title VII." *Id.*  Or, "[t]o put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." *Id.* at p. 322; *Moore v. City of Phila.,* 461 F.3d 331, 340-41 (3d Cir. 2006).  There is no hard and fast rule as to whether the conduct in a given case is protected. *Barber v. CSX Distribution Servs.,* 68 F.3d 694, 701-02 (3d Cir. 1995).  Instead, the Court must evaluate the facts of each case in light of the statutory language and legislative intent. *Id.*

The Third Circuit has noted that "we do not require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite 'protected conduct'...." *Barber v. CSX Distrib. Servs.,* 68 F.3d 694, 701-02 (3d Cir. 1995) (*citing Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990) (*explaining that acceptable forms of protected activity under Title VII's analogous opposition clause include formal charges of discrimination "as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges"*)) (emphasis added).

2. Ms. Roach reported the incident to Genearl Manager Hazen via a Zoom conference in March of 2024, Ms. Roach claimed she felt she was being "discriminated against, that he was making condescending comments and I felt like I was being discriminated against because I was a mom and that he had it out for me," and explained the specific comments at issue. Pl. Dep., at p. 174:2-8, 18-22; 214:15-19.

These internal complaints to high level managers, opposing gender-based mistreatment certainly qualify as protected conduct under Title VII and the LAD.  They are not "vague" as Defendant's briefing suggests.  They make clear an employee's opposition to illegal commentary stereotyping a woman that she cannot do a job – because she is a mother.  Defendant's briefing that same need to be "in writing," or brought to HR's attention is not legally correct.  *See Dunston v. Boardwalk 1000, LLC*, No. 19-cv-00512, 2020 U.S. Dist. LEXIS 129614, 2020 WL 4208116, at *7 (D.N.J. July 22, 2020) (citing cases, <u>e.g., Moore</u>, 461 F.3d at 343, and noting that "[i]nformal verbal complaints are [] sufficient . . . to constitute protected activity"); *Bossi v. Bank of Am.*, No. 3:14-cv-02301, 2016 U.S. Dist. LEXIS 110885, 2016 WL 4446444, at *3 (M.D. Pa. Aug. 19, 2016) (noting that, "[t]o qualify" as a protected, "opposition activity, an employee need not engage in the formal process of adjudicating a discrimination claim"); *Barone v. Idexcel, Inc.*, No. 1:22-cv-01232, 2023 U.S. Dist. LEXIS 4575, at *14 n.5 (M.D. Pa. Jan. 10, 2023)(pointing to Plaintiff's verbal complaints regarding gender discrimination).

### ii. There is Sufficient Evidence of a Causal Connection between Ms. Roach's January 17, 2024 and March 2024 Complaints to her April 5, 2024 Termination, and Sufficient Evidence of Pretext.

"Causation" is a *prima facie* element with exceedingly low burdens in the retaliation context. It is well established that a plaintiff's burden to establish a *prima facie* case "is not intended to be onerous." *Sempier v. Johnson,* 45 F.3d 724, 728 (3d Cit. 1995)(citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *see also Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir.1994) (describing *prima facie case* as "relatively simple"); *McKenna v. Pacific Rail Service*, 32 F.3d 820, 825 (3d Cir.1994) (same);

*Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983))(describing *prima facie case* as "easily made out").

Elements such as a causal connection and pretext are not elements to be proven in a vacuum or with any certain type of facts. In *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000), the Third Circuit reiereated that the existence of a causal link between protected activity and an adverse employment action "must be considered with a careful eye to the specific facts and circumstances encountered." There are no exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference. *Kachmar v. Sungard Data Sys.,* 109 F.3d 173, 177 (3d Cir. 1997); *See also Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir. 1986).

In the Third Circuit, an inference of retaliation exists when an employee is terminated shortly after engaging in protected activity. *See Robinson v. S.E. Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993)(temporal proximity creates an inference of retaliation when the timeframe is "unusually suggestive."). Although the Third Circuit has not set forth the specific amount of time necessary to prove that temporal proximity is "unusually suggestive," Courts in this Circuit have typically found less than three months to be sufficient to raise an inference of retaliation. *See Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005)(reversing district court grant of summary judgment because court failed to consider inference created by adverse action within ***less than three months*** following engagement in protected activity); *See also Nesselrotte v. Allegheny Energy, Inc.*, WL 703395 (W.D. Pa. 2009)(***less than three months*** between protected activity and termination sufficiently established causation element); *Planters Lifesavers*, 206 F.3d 271 (3d Cir. 2000)(finding that, among other things, ***"three to four weeks"*** helped raise an inference of causation). In this case, Ms. Roach made her first complaint on January 17, 2024 during the

23

meeting in which the discriminatory remark was made. Pl. SOF at ¶ 29.  This complaint was 11 weeks separated from the termination.  Ms. Roach escalated her concerns to Hazen in March of 2024 (though the record does not identify a more precise date this Zoom meeting occurred).  *Id.* at ¶ 38, Thus, whether it was only a matter of weeks from the ultimate termination date on April 5, 2024 – this is sufficient timing to show a "causal" connection between the two incidents. <u>Moreover, Courts consider the *most recent* incident of protected conduct to measure protected activity.</u>[15]  Ms. Roach's more recent complaint to Hazen in March of 2024 would be most probative to their decision to terminate in April of 2024.

In addition to there being sufficient evidence of sufficient timing between the complaints and the termination,  Ms. Roach points to evidence of antagonism.  Issuing an employee discipline *only after* one engages in protected activity is sufficient to establish a *prima facie* case.  The record is <u>devoid</u> of any evidence showing any type of coaching, counseling or progressive discipline – before Ms. Roach opposed the discriminatory behavior at issue.  It was *only after* she protested Dr. Schubsky's comment during their 1:1 meeting on January 17, 2024 that he determined he was going to place her on a PIP out of nowhere.  Quite literally, the Defense hasn't presented so much as an email showing the managers at issue were dissatisfied with her performance or even contemplating a PIP.  This was because Ms. Roach successfully completed her two (2) month onboarding period from hire through October, was first given individualized goals for Q4 – which she met, and was having positive discussions with Schubsky about planning for Q1 in the New Year. Exhibit K.  Courts typically will negate a finding of causation if an employer can show it was making efforts to implement a PIP or issue discipline already – *before* the protected conduct

---

[15] "Temporal proximity is measured from the most recent protected activity before the adverse action. *See Steele v. Pelmor Labs., Inc*., No. 16-cv-3088, 2017 U.S. Dist. LEXIS 219380, at *9 (E.D. Pa. Apr. 18, 2017)(citing *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 (3d Cir. 2016)).

at issue. *Cf.  Rementer v. Kellogg Co.*, No. 14-1340, 2015 U.S. Dist. LEXIS 133700, at \*27 (E.D. Pa. Oct. 1, 2015)("Looking at the record as a whole, it is clear that Vaspoli sought to place Plaintiff on a PIP *prior* to the time she engaged in any protected activity and reiterated his request only after several more months of documented poor performance.").

Ms. Roach also claims that following the January 2024 meeting, Dr. Schubsky "became more dismissive of me as if he was no longer even interested in communicating with me (despite him being Ms. Roach's direct supervisor)."  Exhibit B, at p. 2.  VuMedi's entire Motion and Statement of Facts rests on the assertion that Ms. Roach had been repeatedly counseled before being placed on this PIP.  That simply never happened.  *Id.*, at p. 2.

The Defendant also asks this Court to assume, without a factual determination – that the goals set forth in this PIP were not an intentional manipulation of previously established goals. Even internal emails drafted in issuing this PIP confirmed that Dr. Schubsky was not letting her stick with previously established team goals, but giving her all individual goals, which would make these number of videos significantly harder to meet.  *See* Exhibit M ("My concern is related to the 60 videos (split between GLP-1, General Obesity, and General Diabetes). "Tribal knowledge" is that VuMedi has a collaborative nature. As Dawn is not bringing enough new videos to the company, I want to set her second PIP goal to acquire the videos directly. If we continue with the same concept that videos coming from any source, that matches our split would count, she may reach the goal, without any personal efforts, just relying on the other team members or ongoing partnerships.").  A jury could easily conclude that he did not wish her to meet *any* goals, but rather – wanted to push her out the door because she had the audacity to oppose his discriminatory statements toward her in their latest meeting.

Ms. Roach relies on the same evidence to support both causation and pretext, as the law

25

fully allows her to do so. "Given that the *prima facie* case and pretext inquiries often overlap, evidence supporting the *prima facie* case can be used to demonstrate pre-text." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008)(*citing Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000)); *Epps v. First Energy Nuclear Operating Co.*, 2013 U.S. Dist. LEXIS 41140, *74, 2013 WL 1216858 (W.D. Pa. Mar. 25, 2013)(same). A causal connection can be demonstrated through direct evidence or circumstantial evidence. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-281 (3d Cir. 2000); *Trujillo-Cummings v. Public Serv. Co.*, 173 F.3d 864 (10th Cir. 1999); *See also Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir.1992). Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant. *Id.*

Given the record evidence, these material issues of fact, and credibility determinations should go to a jury. If a jury credits Ms. Roach's contentions that she was not being counseled about any performance issues, but only geared for a PIP – after she complained, and then put on an aggressive unrealistic PIP monitored by the people she complained to (Schubsky & Hazen), a jury could certainly find retaliation.

3. **Vumedi's Arguments as to the "After Acquired Evidence" Defense are one for a jury, as they are obligated to sustain their burden of proof on this Affirmative Defense.**

Defendant's argument related to the after acquired evidence defense is misplaced for two (2) reasons. One, they make a *novel universally rejected argument* that after acquired evidence should bar Plaintiff's claims <u>in toto</u>. On Page 37 of its brief, the Defense asks this Court to grant summary judgment <u>on all claims</u> based upon its purported after acquired evidence defense. They cite no *law* in support of this proposition.

"When an employer terminates an employee on unlawful grounds, but then later learns of employee wrongdoing for which the employer could have legitimately terminated the employee, that employee's damages are limited." *Jones v. Henry H. Ottens Mfg. Co.*, No. 11-911, 2012 U.S. Dist. LEXIS 31646, at *16-17 (E.D. Pa. Mar. 8, 2012)(citing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 361-61, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995)). In *McKennon*, the Supreme Court established this "after-acquired evidence" rule, holding that such evidence did not bar a plaintiff's relief completely, but would render the plaintiff ineligible for front pay and back pay beyond the date the employer discovered the wrongdoing. *Id*. "It would be both inequitable and pointless," the Supreme Court explained, "to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *Id.* The Supreme Court also provided the standard for making out an after-acquired evidence claim: "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 362-63. The Third Circuit has underscored that this is indeed defendant's burden. *Mardell v. Harleysville Life Ins. Co.*, 65 F.3d 1072, 1074 n.2 (3d Cir. 1995) (on remand from the Supreme Court following *McKennon*).

Second, VuMedi ask for a bar of *all* claims for damages, including emotional distress and punitive damages – again, without any *law* in support of such an assertion. Any non-economic loss, such as damages for emotional distress and punitive damages, would not be limited by the after-acquired evidence doctrine. *See Taylor v. Int'l Maytex Tank Terminal Corp.*, 355 N.J. Super. 482, 810 A.2d 1109, 1118 (N.J. Super. Ct. App. Div. 2002). As explained by the New Jersey Appellate Division:

> Unlike wage-based claims, a non-economic loss, such as emotional distress, if proven, relates to injuries that have no direct nexus to a plaintiffs status as an employee. Instead, they embody damages resulting from alleged misconduct of an employer, which, although directed at an employee, is nevertheless subject to redress because of indignities suffered, not because of the person's status as an employee. An employer who creates a hostile work environment should not be excused from responding in damages for personal injuries caused by its discriminatory conduct simply because it later learns that the injured employee did something in the past, which, if known at the time, would have caused his or her termination. The same rationale applies to claims for punitive damages, which are intended to deter especially egregious conduct, such as actual participation by upper management or willful indifference.

*Id.* at 1118-19; *and see Mateo v. Nestle Waters N. Am., Inc.*, No. 2:13-cv-7270-KM-MAH, 2018 U.S. Dist. LEXIS 64040, at *49-50 (D.N.J. Apr. 16, 2018)(same, denying Motion for Summary Judgment to limit such damages under the after acquired evidence doctrine, as to *both* Plaintiff's Title VII and LAD claims).

The after acquired evidence doctrine *if successful at all* – strictly bars recovery at trial for back pay/front pay & reinstatement, only from the date the misconduct at issue was discovered, and *only if* the employer can sustain its burden of proof that the conduct at issue was of such a severity – that the employee would have been terminated if they had known about it at the time.

The after-acquired evidence doctrine is an affirmative defense that a Defendant must plead and prove in accordance with Fed. R. Civ. P. 8(c).  See *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 621 (3d Cir. 1996) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), for establishing the after-acquired evidence doctrine as an affirmative defense). Inasmuch as the after-acquired evidence defense is an affirmative defense, an employer seeking to invoke it on summary must meet a more stringent evidentiary burden.  The Defendant must demonstrate the complete absence of a genuine factual issue and if it cannot, "the district court should deny summary judgment even if no opposing evidentiary matter is presented."  *National State Bank v. Fed.*

28

*Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (quoting *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992)).

This Honorable Court has expressly declined to apply the after-acquired evidence doctrine at the summary judgment stage where genuine disputes of material fact exist. In *Kancherla v. Lincoln Tech. Inst., Inc.*, No. 14-7784 (KM), 2018 U.S. Dist. LEXIS 25456, at 43–45 (D.N.J. Feb. 15, 2018), the court rejected the employer's attempt to invoke the doctrine to limit damages under the FMLA and NJLAD, finding that factual disputes remained regarding the alleged misconduct <u>and its severity</u>. The court reiterated that "where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." *Id.* (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360, 362–63 (1995)). Thus, the Court refused to apply the doctrine to preclude or limit recovery, leaving the issue for trial.

So too in *Gorman v. Meeder Fin. Servs.*, Civil Action No. 04-00499(SDW), 2007 U.S. Dist. LEXIS 41057, at *26 (D.N.J. June 4, 2007))("[I]t can not be concluded, as a matter of law, that Defendants have established the elements of a defense based on after acquired evidence to grant judgment on their behalf. The evidence, viewed in the light most favorable to the non-mover Plaintiff, does not support a finding that Defendants would have unequivocally fired Plaintiff," despite evidence the Plaintiff was found to have been working for a competitor of the defendants during his employment with the Defendants, and had a Non-Compete Agreement). So too in *O'Malley v. Wire Weld, Inc.*, Civil Action No. 09-303, 2012 U.S. Dist. LEXIS 16320, at *21 (W.D. Pa. Feb. 9, 2012)(refusing to apply the doctrine at summary judgment, as "there is a material issue of fact as to whether the Plaintiff's conduct in sharing [sensitive company financial information

with a third party] 'was of such severity' that he would have been terminated had the Defendants known of it at the time of his discharge. *McKennon*, 513 U.S. at 362-63). So too in *Jones v. Henry H. Ottens Mfg. Co.*, No. 11-911, 2012 U.S. Dist. LEXIS 31646, at *17 (E.D. Pa. Mar. 8, 2012)(rejecting motion for summary judgment on the after acquired evidence doctrine, despite Plaintiff's failure to disclose conviction of a crime in application for employment, and despite employer's evidence that that misrepresentations on an application form would be grounds for termination. "[I]t is clear Ottens *could have* terminated Plaintiff upon learning of his convictions and subsequent misrepresentation on the employment application," but not sufficient evidence at the summary judgment stage that they would have).

The evidence adduced by Plaintiff, viewed in a light most favorable to her, clearly creates a factual issue as to whether she a.) engaged in wrongdoing, let alone b.) wrongdoing sufficiently severe that Defendant would have **definitively** (as opposed to might have) terminated her for that reason alone.  McKennon, 513 U.S. at 362-363.  Defendant relies on their employee: Michael Rausch to assert that the two (2) did not discuss a business issue that day, even though Ms. Roach claims she did have a 30 minute conversation with her Coordinator Michael Rausch on this exact issue.  See Pl. Dep., at p. 173:4-10.  "Mike and I did speak that day regarding an issue with another KOL video."  Pl. Dep., at p. 137:19-25.  She simply couldn't recall if it was Zoom, Slack of over the phone.  *Id.* at p. 138:8-14.  Ms. Roach did not always put every single meeting on her calendar, and may not have done so with Mr. Rausch until after Dr. Schusbky inquired about what she did with her time that day.  Pl. Dep. at p.  139:18-140:7.  When Dr. Schubsky asked what she was doing in a specific block of time that day, Ms. Roach responded: "Mike and I jumped on a call to discuss potential type 1 video I posted to sheet today for Zepbound and another video Susan Brian wanted to replace her existing menopause video with because she added graphics. Figured it was

30

easier to discuss the change and get his opinion live. Will add these types of calls to my calendar as they pop up so that it's easier for all, but sincerely I don't mine you emailing whenever you need." *Id*. at p. 141:4-22.  The sole basis for claiming that Ms. Roach was dishonest is citing to Rauch  (a current employee, or at least as of the time of his deposition in this case) that they didn't have such a call and Ms. Roach asked him to lie.  These are material factual disputes, as Mr. Roach vehemently denies that.  *Infra*.  The Defense cannot sustain a finding as a matter of law on the after-acquired evidence defense based upon materially disputed facts.

To the extent this defense may bear *only on the scope of remedy*, the issue should be reserved for Defendant's proofs at trial. *See McKennon*, 513 U.S. at 360–62.

## IV.    CONCLUSION

WHEREFORE, Ms. Roach respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke, Esq.*
Christine E. Burke, Esq.
Karpf, Karpf & Cerutti, P.C.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053

Date:  December 22, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| DAWN ROACH | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | CASE NO.: 24-7795 |
| v. | : | |
| | : | |
| VUMEDI, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CERTIFICATE OF SERVICE**

I certify on the date set forth below, that I served Plaintiff's Response in Opposition to Defendant's Motions for Summary Judgment via electronic filing to counsel of record below:

Qing H. Guo, Esq.
Elizabeth F. Lorell, Esq.
Gordon Rees Scully Mansukhani
290 W. Mount Pleasant Avenue
Suite 3310
Livingston, NJ 07039
QGuo@grsm.com
ELorell@grsm.com

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Christine E. Burke, Esq.*
Christine E. Burke, Esq.
Karpf, Karpf & Cerutti, P.C.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053

Dated:  December 22, 2025

32