<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**DAWN ROACH**,

                       Plaintiff,

                       v.

**VUMEDI, INC.**,

                       Defendant.

Civil Action No. 24-7795 (ZNQ) (JTQ)

**OPINION**

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendant VuMedi, Inc. ("Defendant"). ("Def.'s Mot.," ECF No. 38.) Defendant submitted a brief in support of its Motion ("Def.'s Moving Br.," ECF No. 38-1) and a Statement of Undisputed Material Facts ("Def.'s SUMF," ECF No. 38-3). Plaintiff Dawn Roach ("Plaintiff") submitted a brief in opposition ("Pl.'s Opp'n Br.," ECF No. 42), a Response to Defendant's Statement of Undisputed Facts ("Pl.'s RSUMF," ECF No. 42-1), and a Counterstatement of Undisputed Material Facts ("Pl's CSUMF," ECF No. 42-2). Defendant replied ("Def.'s Reply Br.," ECF No. 45) and submitted a Response to Plaintiff's Counterstatement of Undisputed Material Facts ("Def.'s RCSUMF," ECF No. 46).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion for Summary Judgment.

1

I.        **BACKGROUND AND PROCEDURAL HISTORY**

Defendant is a healthcare video education technology company.  (Def.'s SUMF ¶ 1.) Plaintiff began her employment with Defendant on July 31, 2023, and she worked as the Director of Medical Education with a focus on diabetes and obesity.  (*Id.* ¶¶ 2–4.)

Plaintiff's direct supervisor was Bernardo Schubsky ("Schubksy"), who held the title of Senior Director of Medical Education.  (*Id.* ¶ 6.)  In addition to Plaintiff, Schubsky also supervised Sojna Lee ("Lee"), Michael Rausch ("Rausch"), Paulina Cujzek ("Cujzek"), and Marija Kraken. (*Id.* ¶ 7.)  Schubsky's supervisor was Desirae Hazen ("Hazen"), who held the position of General Manager of Healthcare Professional Education during Plaintiff's employment.  (*Id.* ¶ 6.)  Plaintiff did not manage anyone in her role but worked most closely with Lee, who was one level below Plaintiff on Defendant's corporate structure, and Rausch, who was two levels below Plaintiff on the corporate structure.  (*Id.* ¶¶ 11–14.)

During Plaintiff's two-month onboarding period with Defendant, she did not have any performance goals to meet.  (*Id.* ¶ 15.)  After that period, Defendant provided Plaintiff with the following video acquisition goals for the last quarter of 2023: (1) twenty-five GLP-1 videos; (2) twenty diabetes videos; (3) fifteen obesity videos; and (4) two partnership goals.  (*Id.* ¶ 18.)  At that time, the two partnership goals were a combined goal between Plaintiff and Lee, and Lee acquired each of the videos on her own.  (*Id.* ¶ 19.)  Plaintiff satisfied her video acquisition goals for the last quarter of 2023.  (Pl.'s CSUMF ¶ 27.)  For quarter one of 2024, Defendant kept Plaintiff's video acquisition goals numerically the same.  (Def.'s SUMF ¶ 20; Pl.'s CSUMF ¶ 28.)

In November 2023, Lee and Rausch made complaints to Schubsky because they were helping Plaintiff achieve her video goals, which caused extra workload and required Rausch to take on more work than his job description entailed.  (Def.'s SUMF ¶¶ 23–26.)  Lee and Rausch

asserted to Schubsky that Plaintiff was relying on them to achieve her goals and was not actually doing the work she recorded. (*Id.* ¶¶ 26–27.) In December 2023, Hazen also received a complaint about Plaintiff's performance from Cujzek, causing leadership to become concerned that Plaintiff was exclusively relying on others to meet her quarterly goals and failing to independently achieve video acquisitions and develop the partnerships required to meet her goals. (*Id.* ¶¶ 28–29.) Hazen testified, for example, that Plaintiff had: (1) no opportunities logged in Salesforce, or next to none as compared to her peers; (2) no meetings scheduled on her calendar in comparison to other high achievers; and (3) she would not respond to Schubsky when he reached out despite nothing being scheduled on her calendar. (*Id.* ¶ 30.)

Plaintiff and Schubsky had one-on-one meetings every week. (Def.'s SUMF ¶¶ 16–17.) During one of those meetings on January 17, 2024, Plaintiff alleges that Schubsky told her she should be further along in meeting her goals but did not expect her to be because she is a mother and he did not expect her to work the same amount of hours that he did. (Pl.'s CSUMF ¶ 29.) In response, Plaintiff told Schubsky that his statement was inappropriate and she was offended by it. (*Id.* ¶ 30.) Schubsky denied that this interaction occurred. (*Id.* ¶ 29; *see also* "Schubsky Dep." 56:3–57:14, ECF No. 42-9.)

On February 29, 2024, Plaintiff was placed on a thirty-day performance improvement plan ("PIP"). (Def.'s SUMF ¶ 48.) The PIP required Plaintiff to: (1) individually achieve a "closed win" of two partnerships—without relying on Lee or Rausch—by prospecting at least ten new partnership opportunities; and (2) meet her numerical first quarter video acquisition goals through "direct prospecting" as Plaintiff was heavily relying on video content from other specialties. (ECF No. 38-12.) Once the PIP started, Plaintiff and Schubsky's one-on-one meetings became twice a week, and Plaintiff received coaching from Cujzek, who had recently returned from maternity

3

leave. (Def.'s SUMF ¶¶ 50, 52.) Plaintiff had two calls with Hazen after her PIP started in March 2024. (*Id.* ¶ 51.) During the first call with Hazen, Plaintiff alleges she told Hazen that she felt "discriminated against [by Schubky's comment] . . . because [Plaintiff] was a mom and that [Schubsky] had it out for [Plaintiff]." (Pl.'s CSUMF ¶ 32.) Hazen testified that Plaintiff never made any complaints about discrimination or Schubsky. ("Hazen Dep.," 71:19–73:7, ECF No. 38-7.)

Following the issuance of the PIP, Plaintiff's performance improved but Plaintiff was still not meeting the pace necessary to achieve her goals. (Def.'s SUMF ¶ 53.) By the end of the thirty-day PIP period, Plaintiff did not meet her video acquisition goals and achieved only thirty-two of the sixty videos required; Plaintiff acquiring just: (1) twelve of the twenty-five required GLP-1 videos; (2) five of the twenty required diabetes videos; and (3) fifteen of fifteen required obesity videos. (*Id.* ¶¶ 54–56.) Defendant terminated Plaintiff due to her performance on April 5, 2024, and offered Plaintiff a severance package that it provides to all terminated employees. (*Id.* ¶¶ 58–61.) During the termination meeting with Schubsky and Christina Bailey ("Bailey"), Plaintiff alleges that she told them that she felt discriminated against by Schubsky. (Pl.'s CSUMF ¶ 45.) Bailey testified that Plaintiff never made any such complaints. ("Bailey Dep." 65:13–24, ECF No. 38-9.) After Plaintiff's termination, Defendant hired a male cardiometabolic manager to assume responsibility for matters relating to diabetes and obesity. (Pl.'s CSUMF ¶ 47.)

Against that backdrop, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on April 25, 2024. (ECF No. 42-5.[1]) Plaintiff then filed a Complaint on July 16, 2024, asserting claims for discrimination and retaliation

---

[1] Although Plaintiff pled that she received an EEOC right to sue letter (ECF No. 1 ¶ 34), Plaintiff neither attached a right to sue letter to her Complaint nor submitted one in the present motion record.

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12, *et seq.* ("NJLAD"). (ECF No. 1.)  Defendant filed an answer on September 19, 2024.  (ECF No. 5.)  The parties completed discovery on July 24, 2025.  (ECF No. 28.)  On November 4, 2025, Defendant filed the instant Motion for Summary Judgment.  (Def.'s Mot.)  Plaintiff opposed Defendant's Motion on December 22, 2025 (Pl.'s Opp'n Br.), and Defendant replied on January 6, 2026 (Def.'s Reply Br.).

## II.   SUBJECT MATTER JURISDICTION

The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because the Complaint raises a federal cause of action.  (*See generally* ECF No. 1.)  The Court exercises supplemental jurisdiction over the state law claims asserted in the Complaint pursuant to 28 U.S.C. § 1367.  (*Id.*)

## III.   LEGAL STANDARD

Rule 56[2] provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000).  The moving party bears the burden of establishing that no genuine dispute of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist).  "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment."  *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 248–49.  The summary judgment standard, however, does not operate in a vacuum.  The Court "must view the evidence presented through the prism of the substantive evidentiary burden," *id.* at 254, and construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. County of Allegheny P.A.*, 139 F.3d 386, 393 (3d Cir. 1998).

## IV.   **DISCUSSION**

Defendant contends summary judgment should be granted because Plaintiff cannot establish her claims for gender discrimination and retaliation.  (*See generally* Def.'s Moving Br.) The Court agrees.  For the reasons that follow, Defendant's Motion will be granted.

### A.   **PLAINTIFF'S GENDER DISCRIMINATION CLAIMS**

The "Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD[.]" *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)).  Gender discrimination claims under Title VII and the NJLAD may be established either by the presentation of direct evidence of

6

discrimination or from evidence which creates an inference of discrimination. *Kohn v. AT & T Corp.*, 58 F. Supp. 2d 393, 405–06 (D.N.J. 1999). Plaintiff contends she has submitted both direct evidence and circumstantial evidence of discrimination sufficient to create a genuine dispute of fact. (Pl.'s Opp'n Br. at 6–19.) The Court addresses each argument in turn.

### 1.    Direct Evidence of Gender Discrimination

Plaintiff asserts she has direct evidence of gender discrimination because Schubsky, as her direct supervisor, told her that "he did not expect her to be [further along in meeting her video goals] because he knows she[ is] a mom, has kids to take care of, and he does[ not] expect her to work the hours that he does." (Pl.'s Opp'n Br. at 8.) Plaintiff contends that this evidence is sufficient for a jury to conclude that Schubsky did not want Plaintiff working on his team because she would be incapable of "giving him the desired hours (and thus [the] outcome) required for this job." (*Id.* at 9.)

"A plaintiff attempting to prove discrimination by direct evidence faces a 'high hurdle.'" *Lepore v. Lanvision Sys. Inc.*, 113 F. App'x 449, 452 (3d Cir. 2004) (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)). "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact in issue without inference or presumption." *Kohn*, 58 F. Supp. 2d at 405–06 (citations omitted). Direct evidence can originate from "statements of a person involved in the decision[-]making process that reflect a discriminatory or retaliatory animus of the type complained of in the suit[.]" *Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002) (citations omitted). On the other hand, the Third Circuit has noted that "statements by non-decisionmakers, statements by decisionmakers unrelated to the contested employment decision, and other 'stray remarks'" do not constitute direct evidence of discrimination. *Id.* at 338 n.2 (citations omitted).

At the outset, the Court finds there is a genuine dispute of fact as to whether Schubsky made the gender-based comment at issue to Plaintiff.  (*Compare* ECF No. 42-4 171:11–19 (Plaintiff testifying as to Schubsky's gender-based remark made in the January 2024 meeting) *with* Schubsky Dep. 56:3–57:14 (Schubsky denying making the statement or recalling Plaintiff taking any offense).)  Given the lack of record evidence demonstrating that Schubsky indeed made the comment, "[a] trier of fact would have to discredit [Plaintiff's] testimony in order to credit [Schubsky's] testimony."  *Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp. 2d 681, 707 (W.D. Pa. 2010).  Such a credibility determination is inappropriate for the Court to make at the summary judgment stage.  *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1024 (3d Cir. 2008) (noting that credibility judgments are disallowed when ruling on a summary judgment motion).

Assuming that Schubsky made the statement at issue, the Court finds it inadequate direct evidence of discrimination.  Although Schubsky was Plaintiff's supervisor and involved in the ultimate decision to place Plaintiff on a PIP that led to her termination, the remark at issue requires one to infer that Schubsky either (1) did not want Plaintiff on his team or (2) thought of Plaintiff as less competent for her position, as Plaintiff argues.  *See Kohn*, 58 F. Supp. 2d at 405–06 ("Evidence is not direct where the trier of fact must *infer* the discrimination . . . from an employer's remarks" (emphasis in original) (citation omitted)).  Additionally, the statement was not made at the time Schubsky issued Plaintiff's PIP or given as a reason for Plaintiff's termination.  The comment's temporal proximity from the adverse employment actions complained of here is too distant to demonstrate direct unlawful discrimination.  *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) (discussing that stray remarks by decisionmakers are rarely given much weight if made too remotely from the date of the decision).  Furthermore, Plaintiff has not cited to any legal authority demonstrating that such a stray remark should

constitute direct evidence in a gender discrimination case, and instead, submits factors for the Court's consideration that bear on establishing the inference of discrimination.  (*See* Pl.'s Opp'n Br. at 10 (citing *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 722 (E.D. Pa. 2021) (evaluating stray gender-based comments as probative of an inference of gender bias)).)  Thus, had Schubsky made this remark, it alone does not constitute direct evidence of gender discrimination.

### 2.   Circumstantial Evidence of Gender Discrimination

Gender discrimination claims brought under Title VII and the NJLAD based upon circumstantial evidence are governed by the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  First, under the *McDonnell Douglas* framework, a plaintiff must establish a *prima facie* case of discrimination.  *Tourtellotte*, 636 F. App'x at 842.  Second, if the plaintiff successfully demonstrates a *prima facie* case of discrimination, "the burden shifts to the employer to articulate a legitimate, . . . non[-]discriminatory reason for its actions."  *Id.*; *see also Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (stating that the employer's burden of showing a non-discriminatory reason is "relatively light")).  Third, "[i]f the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's . . . non[-]discriminatory explanation is merely a pretext for the discrimination[.]"  *Tourtellotte*, 636 F. App'x at 842.

### a.   Prima Facie Case of Discrimination

To establish a *prima facie* case of gender discrimination, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she

9

suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Id.* (citations omitted).[3]

Defendant contends that Plaintiff cannot establish the inference of discrimination element because the record is devoid of any comparator evidence demonstrating that similarly situated male employees were treated more favorably than Plaintiff. (Def.'s Moving Br. at 14–16.) In response, Plaintiff argues that an inference of discrimination is apparent due to the combination of Schubsky's remark and the fact that a male was hired to assume Plaintiff's role.[4] (Pl.'s Opp'n Br. at 11–14.) In reply, Defendant argues that a male did not replace Plaintiff's position or assume her duties, but rather, Plaintiff's position was eliminated, and her responsibilities were redistributed. (Def.'s Reply Br. at 5.)

The Court finds that a reasonable juror could conclude that Plaintiff met her *prima facie* burden in establishing an inference of discrimination.[5] *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (explaining that establishing a *prima facie* case is a "low bar" for plaintiffs to clear). Here, it is not contested that after Plaintiff's termination, a male cardiometabolic manager assumed responsibility for matters relating to diabetes and obesity. (Pl.'s CSUMF ¶ 47.) Although the record is not clear regarding the decision to forego hiring a replacement for Plaintiff, Defendant concedes that Plaintiff's role was

---

[3] The parties do not dispute the first three elements of the *prima facie* showing for gender discrimination under *McDonnell Douglas*.

[4] "'[C]omparator' evidence is most commonly used to show circumstances giving rise to an inference of discrimination." *Evans v. Sch. Dist. of Phila.*, Civ. No. 22-1410, 2022 WL 17652757, at *11 (E.D. Pa. 2022). Such evidence involves "the identification of a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably[.]" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013). Similarly situated individuals must be "similar . . . in all relevant respects." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881–82 (3d Cir. 2011). As Plaintiff does not directly respond to Defendant's argument regarding similarly situated males in her opposition brief (*see generally* Pl.'s Opp'n Br.), the Court finds this issue abandoned. *See Lawlor v. ESPN Scouts, LLC*, Civ. No. 10-5886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant.").

[5] For purposes of this analysis, the Court again assumes Schubsky made the gender-based comment.

eliminated.  (Def.'s Reply Br. at 5.)  In situations where there is a reduction in the workforce, it is enough to demonstrate that someone outside of the plaintiff's protected class was retained.  *See Jenkins v. Cornerstone Relocation Grp., LLC*, Civ. No. 23-1755, 2025 WL 360553, at *8 (D.N.J. Jan. 31, 2025) (explaining that in the context of a reduction in the workforce, "a plaintiff need not show that 'similarly situated' employees in *similar roles* were retained but need only show that employees were retained outside their protected class." (emphasis in original) (citation omitted)). On this record, at least one male was retained as Plaintiff's position was eliminated, and as such, a reasonable juror could find that Plaintiff has met her *prima facie* burden.

Neither party disputes that Defendant had a legitimate non-discriminatory reason for terminating Plaintiff's employment insofar as Plaintiff failed to meet the goals set forth by the PIP. The Court thus turns to whether Plaintiff can establish that Defendant's reason for terminating her was pretextual.

### b.    Pretext

For Plaintiff to meet her burden at the pretext stage, she "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either[:] (1) disbelieve [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  Thus, "to avoid summary judgment, [Plaintiff's] evidence rebutting [Defendant's] proffered legitimate reason[ ] must allow a fact-finder reasonably to infer that . . . [Defendant's] proffered . . . reason [ ] was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008), *order clarified*, 543 F. 3d 178 (3d Cir. 2008).  "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the

11

employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Instead, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence," and thus "infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (internal quotation marks and citations omitted).

Plaintiff contends that her termination was pretextual because: (1) Schubsky made the gender-based comment and was the ultimate decisionmaker to put Plaintiff on a PIP that contained numerous falsities about her performance; (2) her peers told Plaintiff that she "was working very hard" and did great work during the timeframe in which Plaintiff was on the PIP; and (3) Defendant offered her a severance agreement that contained a waiver of any potential discrimination or retaliation claims. (Pl.'s Opp'n Br. at 9, 14–19.) The Court addresses each contention in turn.

The Court finds that Plaintiff has not met her burden in demonstrating a genuine dispute of fact such that a reasonable juror could infer that Defendant's legitimate non-discriminatory reason for her termination was a pretext for discrimination. First, the temporal proximity between Schubsky making the gender-based comment and putting Plaintiff on a PIP leading to Plaintiff's termination is not unduly suggestive of a discriminatory motive. Here, the record demonstrates that: (1) Lee, Rausch, and Cujzek complained about Plaintiff's performance before the end of 2023; (2) Plaintiff was aware in November 2023 that, at some point, she would be responsible for achieving her video goals individually; and (3) Plaintiff concedes she did not meet her PIP goals by March 2024. (*See* ECF No. 47-1 (Plaintiff's November 2023 text messages to Lee stating that "[Schubsky is] going to talk to me about handling diabetes content. . . . I think he eventually wants me to take everything[,] like not have us divide and conquer eventually[.]"); Def.'s SUMF ¶¶ 23–

12

28, 53–55; RSUMF ¶¶ 23–28, 53–55).  There is accordingly no dispute in the record that Plaintiff's performance issues began before Schubsky's January 17, 2024 meeting with Plaintiff.  *See, e.g.*, *Thompson v. Liberty Mut. Ins.*, Civ. No. 18-6092, 2021 WL 1712277, at *7 (D.N.J. Apr. 29, 2021) (concluding a reasonable juror would not find pretext where the plaintiff's performance issues began years before announcing her pregnancy).

Second, to the extent Plaintiff asserts her peers told her she was doing great work, there is no dispute in the record that Plaintiff "was generating more action" while on her PIP, but she was still not meeting her goals.  (Def.'s SUMF ¶ 53; RSUMF ¶ 53.)  Absent evidence of discriminatory motive, the Court cannot second-guess Defendant's business decision nor reexamine the merits of Plaintiff's PIP.  *See Ezold*, 983 F.2d at 527 ("[A] plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision.  Without some evidence to cast this doubt, this Court will not interfere in an otherwise valid management decision.").

Third, the mere offering of a severance agreement does not demonstrate pretext, especially where there is no evidence in the record to suggest that Defendant's offer was unusual here.  *See Brennan v. City of Phila.*, 856 F. App'x 385, 387 (3d Cir. 2021) (finding the severance package offer insufficient to demonstrate pretext where the record suggested such offers are not unusual).

Therefore, even if Plaintiff were to establish a *prima facie* case of discrimination, she fails to demonstrate that a reasonable juror could disbelieve Defendant's legitimate non-discriminatory reason for her termination.  Where the evidence "is so one-sided that one party must prevail as a matter of law," summary judgment is appropriate.  *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990) (citations omitted).  The Court will therefore grant summary judgment in Defendant's favor with respect to Plaintiff's discrimination claims.

### B.    PLAINTIFF'S RETALIATION CLAIMS

Similar to gender discrimination claims based on circumstantial evidence, retaliation claims brought under Title VII and the NJLAD are controlled by the *McDonnell Douglas* three-step burden shifting framework. *Tourtellotte*, 636 F. App'x at 842. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). If a plaintiff establishes a *prima facie* case of retaliation, the Court must turn to the subsequent steps in the *McDonnell Douglas* framework previously outlined. *Tourtellotte*, 636 F. App'x at 842.

Plaintiff argues she has met the *prima facie* elements for retaliation because: (1) she verbally opposed Schubsky's gender-based comment in the January 17, 2024 meeting and told Hazen in a March 2024 Zoom conference that she felt she was being discriminated against because she was a mother; and (2) the timing of her complaints and her termination is demonstrative of a causal connection, especially where Schusbky antagonized Plaintiff by putting her on a PIP "out of nowhere." (Pl.'s Opp'n Br. at 21–24.) To demonstrate pretext, Plaintiff relies on the same arguments. (*Id.* at 24–25.)

At the outset, the Court finds there is a genuine dispute of fact as to whether Plaintiff verbally protested, opposed, or made complaints of discrimination to Schubsky and Hazen. Plaintiff testified that she told Schubsky his gender-based comment was inappropriate (ECF No. 42-4 at 171:25–172:3), and that she told Hazen about Schubsky's discrimination (*see id.* at 98:11–99:12). Schubsky and Hazen, respectively, denied Plaintiff's account in their depositions. (*See* Schubsky Dep. 56:3–57:14 & Hazen Dep. 71:19–73:7.) The Court cannot make credibility

14

determinations on summary judgment, and as such, a dispute of fact remains.  *See Facenda*, 542 F.3d at 1024.

Assuming Plaintiff were to establish a *prima facie* case of retaliation, however, the Court concludes that a reasonable juror could not find that Plaintiff has demonstrated that her termination was a pretext for retaliation.  Contrary to Plaintiff's assertion, the temporal proximity between Plaintiff's alleged complaint to Hazen in the beginning of March 2024 and Plaintiff's termination on April 5, 2024 for failing to meet her PIP is not "unduly suggestive [of retaliation] especially, where, as here, [Defendant's] proffered legitimate reason fits neatly into th[e] timeframe" in which Plaintiff was expected to remediate her performance issues.  *Brennan*, 856 F. App'x at 387 (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)); *Thomas*, 351 F.3d at 114 (finding a three-week gap, "in the context of the record as a whole," insufficient to demonstrate pretext); *Mercer v. SEPTA*, 608 F. App'x 60, 65 (3d Cir. 2015) ("The adverse action must occur within days, not months, of the protected activity."); *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014) ("[A] temporal proximity [of] greater than ten days requires supplementary evidence of retaliatory motive.").

Plaintiff has also not demonstrated a pattern of antagonism.  Plaintiff asserts Schubsky became dismissive of her following her protestation of his gender-based comment and that Schubsky intentionally manipulated the goals in her PIP, making them significantly harder to meet.  (Pl.'s Opp'n Br. at 25.)  Plaintiff, however, cites her own EEOC charge to corroborate this fact, and does not point to any other evidence in the record to support that Schubsky acted dismissive toward her.  Plaintiff's self-serving statements here do not establish a genuine dispute of fact.  *See Russel v. City of Phila.*, Civ. No. 13-3151, 2016 WL 4478764, at *5 n.13 (E.D. Pa. Aug. 25, 2016) (declining to consider EEOC complaint on summary judgment as competent evidence because it

15

is "like a complaint filed in civil litigation, [and] merely provides Plaintiff['s] own, self-serving allegations. It is well-settled that a plaintiff cannot meet her summary judgment burden by relying upon the allegations contained in the complaint." (citing *Celotex*, 477 U.S. at 324)).

Moreover, the notion that Schubsky intentionally manipulated Plaintiff's PIP goals to make them more difficult to meet is belied by the documents submitted by Defendant. The documents submitted herein demonstrate that Plaintiff knew what would be expected of her performance before the issuance of the PIP and her subsequent termination. As noted above, on November 16, 2023, Plaintiff texted Lee that "[Schubsky is] going to talk to me about handling diabetes content. . . . I think he eventually wants me to take everything[,] like not have us divide and conquer [to meet the video goals.]" (ECF No. 47-1.) Additionally, on December 8, 2023, Plaintiff texted Lee regarding Schubsky's plans for quarter one, stating that they said "something to the effect of [a]chievement of acquisition goals: specialty only OR browse terms. . . . [It] leads me to believe that [Schubsky] is going to try to make these video goals . . . connected to our actual specialty only." (*Id.*) And here, Plaintiff's PIP required her to: (1) achieve a "closed win" of two partnerships on her own; and (2) meet her video goals through direct prospecting for her own specialty. (ECF No. 38-12.) Plaintiff concedes she did not meet these goals. Considering the record as a whole, Plaintiff has not met her burden in demonstrating that a reasonable juror would discredit Defendant's proffered reasons for placing Plaintiff on a PIP.

As Plaintiff has failed to establish a genuine dispute of fact with respect to her retaliation claims, the Court will grant summary judgment in Defendant's favor.

## V.    **CONCLUSION**

For the reasons stated above, the Court will GRANT Defendant's Motion for Summary

Judgment.  An appropriate Order will follow.


Date: June 18, 2026


                                s/ Zahid N. Quraishi
                                **ZAHID N. QURAISHI**
                                **UNITED STATES DISTRICT JUDGE**